## THE STATE vs. CORDELIA ALFORD.

The accused, a woman, was charged with an assault and battery upon Mrs. B, who lived in another part of the same house with her. She claimed that the affair was an accidental collision between them, and was without malice on her part. The injury was a serious one, and Mrs. B. was confined to her bed for several days under the care of a physician. Held that, for the purpose of showing that the conduct of the accused in the affair was intentional and malicious, evidence was admissible that she did not go in to see Mrs. B, or show her any attention or sympathy while she was suffering from the injury.

The accused had two adult daughters living with her, who were present at the assault. The evidence offered by the prosecution for the above purpose was, that *the accused and her two daughters* had wholly neglected Mrs. B after the injury, in the manner above stated. The counsel for the accused took a general objection to the whole of this evidence. Held, that the evidence as to the conduct of the daughters might strictly be admissible, as it indicated a feeling on their part which, in the circumstances, might be presumed to be shared by the mother; but that, if it was inadmissible, yet as the objection was a general one, and the evidence of the mother's conduct, which was admissible, was embraced in it, the objection was not well taken.

A witness called by the accused was asked on cross-examination by the prosecution whether he was on good terms with Mrs. B. Held, that this inquiry was inadmissible, Mrs. B being merely a witness in the case, and having no interest in it which the law could recognize.

The inquiry having been admitted by the court, against the objection of the accused, the witness answered that he was on good terms with her, but not with her husband. Held that, as he answered the inquiry in the negative, no injury had resulted from the erroneous admission of the inquiry; and that, though his statement as to his controversy with her husband was inadmissible, yet as it was not responsive to the question, and was not objected to by the accused, it was no ground for granting a new trial.

The order in which evidence shall be introduced upon a trial, is a matter over which the court has discretionary power. Where the court allows a party, after having closed his principal evidence, to introduce at a later stage of the trial and in connection with rebutting evidence, evidence which pertains to his principal case, it is an exercise of discretion on the part of the court of which error can not be predicated.

And where a motion for a new trial does not show whether the court admitted the evidence in the exercise of its discretion, or on the ground that the party offering it was entitled to its admission as a matter of legal right, it will be presumed that the court was exercising its discretion.

GRAND-JUROR's complaint, charging the defendant with an assault and battery on Dorinda Blackwell; appealed by the defendant from the judgment of a justice of the peace, and

tried in the superior court, on the plea of not guilty, before *Mc Curdy, J.*

On the trial the counsel for the state claimed that the assault and battery had been committed by Mrs. Alford on Mrs. Blackwell in the manner alleged. The counsel for the accused claimed that the collision between them resulted from the act of Mrs. Blackwell, or at least was accidental and not willful or malicious on the part of Mrs. Alford. The counsel for the state offered Mrs. Blackwell as a witness, who testified, among other things, that the assault was committed by the accused in the presence of Mrs. Alford's two adult daughters, Delphine and Althea Alford, living with her; that the families of the witness and Mrs. Alford, at the time of the assault, occupied separate apartments in the same house; and that she was stricken down and severely injured, and was immediately taken to her bed, and was for some time thereafter confined to her room under the care of a physician. The counsel for the state asked the witness whether during this time Mrs. Alford, Delphine or Althea ever came to see her or inquire after her. To this question the counsel for the accused objected as irrelevant and as tending to withdraw the attention of the jury from the real issue, but the court admitted it, and the witness answered in the negative.

During the trial the accused offered as a witness on her behalf, Daniel M. Alford, a brother of Mrs. Blackwell. On his cross-examination the counsel for the state asked him whether he was on good terms with Mrs. Blackwell, for the purpose of discrediting his testimony against her. This question was objected to by the counsel for the accused as irrelevant and therefore inadmissible, but the court admitted it; whereupon the witness answered that he was on good terms with her, but further said that he was not on good terms with her husband. The counsel for the accused did not request the court to reject that part of the answer which was not responsive to the question.

Mrs. Blackwell having testified as to the position and conduct of Mrs. Alford at the time of the assault, further testified as to a conversation which occurred between her and Samuel

Alford, the husband of the accused, immediately thereafter, in the presence and hearing of the accused and her daughters Delphine and Althea. In the progress of the defense the counsel for the accused introduced the said Delphine and Althea, and also one Day Alford, for the purpose, among other things, of contradicting Mrs. Blackwell, and also to prove what the accused claimed to be the facts in relation to the assault alleged. It was admitted by the counsel for the accused that the three last named witnesses had testified on behalf of the accused on the original hearing before the justice; and after the evidence for the defense was closed on the present trial, the counsel for the state, by way of rebutting evidence, introduced one Frederick Ripley, by whom they claimed to prove that the said Delphine, Althea and Day, on the hearing before the justice, had testified as to the position of Mrs. Alford at the time of the assault, and as to the conversation between Mrs. Blackwell and Mr. Alford, differently from what they had testified on the present trial. After the rebutting evidence was closed, the defense called on the said Delphine, who testified that on the hearing before the justice she did not testify as to the position of her mother in the manner stated by said Ripley, but as she had testified here. She was at this time introduced by the defense solely for the purpose of stating what she had testified at the justice trial as to the position of Mrs. Alford, and was not asked, nor did she state, what she or any other witness had testified at that trial as to the conversation between Mr. Alford and Mrs. Blackwell. After the defense had closed this examination of her, the counsel for the state proceeded to cross-examine her and among other things inquired what she had testified at the justice trial in relation to that conversation. To this inquiry the counsel for the defense objected, on the ground that the counsel for the state, having closed their rebutting evidence and rested, it was not competent for them to resume the subject upon the cross-examination of a witness subsequently introduced by the defense for a different purpose; that for this purpose the witness became their witness, and that such a proceeding was tantamount to introducing a new witness on behalf of the state; but the court overruled the

State *v.* Alford.

objection and permitted the inquiry to be put, so that the witness might explain her testimony on the former trial ; and the witness in answer thereto replied, that in relation to that conversation she testified differently at the justice trial from her testimony on the present trial, that the question was then put unexpectedly, and that she did not at once call to mind the whole conversation, but that the omission occurred to her mind soon after the trial.

The jury having returned a verdict of guilty, the defendant moved for a new trial for errors in the admission of evidence.

*T. C. Perkins,* with whom was *Eaton,* in support of the motion.

*C. Chapman* and *F. Chamberlin,* contra.

SANFORD, J. In this case the complaint charged, and the public prosecutor claimed to have proved, that the accused committed a violent battery upon the person of Mrs. Blackwell. The accused did not deny that there was an actual collision between them, but she claimed that it resulted from the act of Mrs. Blackwell herself, or at least was on her part accidental, and not willful or malicious. So that the inquiry in this part of the case was, was the collision on the part of the accused malicious and intentional, or not.

Now, had the accused at any time after the collision, in direct terms, confessed that at the time of it she entertained ill will toward Mrs. Blackwell and intended to injure her, no objection could have been made to the evidence of such confession. The voluntary confession of a party that he committed an offense, or that his motives or intentions in committing one were malicious or vindictive, are by jurists and commentators considered evidence of the highest character, and are always permitted to be proved in court. So declarations, though not in the language of explicit confessions, if they have reference to the subject-matter of inquiry, and justify an inference of the fact sought to be established, are always to be received and estimated by the jury according to their

real value. And the conduct of a party affords evidence of the same character, and often gives out indications as unequivocal and satisfactory, as the most explicit declarations or confessions. In the case before us the conduct of the accused after the battery was certainly extraordinary, and in our judgment it was indicative of that state of mind which the prosecutor sought to prove.

The prosecutor had given evidence that Mrs. Blackwell was stricken down in the encounter and seriously injured, that she was immediately taken to her bed, and was for some time thereafter confined to her room under a physician's care,—a condition well calculated to elicit inquiry and enlist the sympathy and kind attention even of those who were in no way connected with its cause. But the accused was, innocently or otherwise, confessedly the immediate author or instrument of Mrs. Blackwell's misfortune. She was present when the injury was received. She resided under the same roof with her and must have known that she kept her room. Under such circumstances, had the collision been accidental and the injury unintentional, the commonest feelings of humanity would have impelled the accused to ascertain, by direct and personal inquiry, the extent and character of Mrs. Blackwell's injuries, and to tender to her some assistance or relief. At any rate she could hardly have withheld the cold and common civility of an inquiry into her condition.

What feelings would be imputed to the driver of a carriage, who having driven over and injured a pedestrian in the street, should leave the injured person to his fate and not even make inquiry regarding the injuries inflicted?

But it was said in the argument, that the conduct of the accused after the collision was explainable upon the assumption that Mrs. Blackwell was the aggressor in the conflict. No evidence however appears to have been offered to prove her so, and no foundation is laid for such assumption. And if such evidence had been given, as the prosecutor denied the fact, the subsequent conduct of the accused would still have been a proper subject of inquiry—leaving it to the jury upon all of the evidence to decide whether Mrs. Blackwell was in

fact the aggressor, or was not, and, if she was, whether in that fact could be found a satisfactory explanation of the peculiar and unusual conduct of Mrs. Alford.

Secondly, it is contended that, however this may be, evidence of the conduct of Mrs. Alford's daughters was irrelevant and inadmissible. It is to be recollected however that these daughters were present with their mother and witnessed the collision, and that they resided with her, and if it would be going too far to presume that the accused by her influence or commands prevented them from going to inquire as to the extent of the injury Mrs. Blackwell had received in that collision, it is not going too far to presume that if the mother had herself entertained no feeling of malice towards her, she would either by persuasion or command have induced her daughters to go, whether she went herself or not. It seems almost as inconsistent with the absence of ill will in the mother toward Mrs. Blackwell, that these daughters, either of their own volition or at the request of their mother, did not visit her during her illness, as it is that the mother herself did not.

We think, therefore, that the evidence relating to the conduct of the daughters was in strictness admissible. But if it was not, the objection was taken to the evidence relating to the conduct of both the mother and the daughters, and as that regarding the conduct of the mother was clearly relevant and admissible, we can not advise a new trial on account of the admission of that relating to the conduct of the daughters under such objection. It was the duty of the objector to discriminate between evidence which was relevant and admissible, and that which was inadmissible, and to confine his objection to the latter. *Fitch* v. *Woodruff & Beach Iron Works*, 29 Conn., 82.

We think the judge erred in permitting the inquiry to be made of Daniel M. Alford whether he was on good terms with Mrs. Blackwell or not. She was but a witness in the case, and had no interest which the law can recognize in the result of the trial. But to that inquiry Alford answered in the negative, so that the accused sustained no injury from such inquiry. And as to the testimony volunteered by him,

that he was not on good terms with Mrs. Blackwell's husband, that was not objected to, and the defendant has no right to a new trial because of the admission of evidence to which she did not object. New trials are granted on account of injurious errors of the court, but not for the errors or omissions of the party or his counsel.

We find no cause for a new trial in the last point made by the defendant's counsel, because it is manifest that no injury or injustice was done to the accused by permitting the inquiry objected to. It afforded the witness an opportunity to explain, and give a reason for, the seeming disagreement between the testimony which she had just given in the superior court, and that which she gave in the trial of the case before the justice. But whether the evidence should in that stage of the trial be received or not, was a question addressed to the discretion of the judge, and from his determination of such a question there is no appeal. 1 Greenl. Ev., § 431. *Commonwealth* v. *Eastman*, 1ˈCush., 217. It is said that the judge decided that the prosecutor had a legal right to make the inquiry, and in so doing violated some established rule of law or practice, and that it can not be known how he would have decided had he considered it a question addressed to his discretion. The motion states that " the court overruled the objection and permitted the inquiry to be put, so that the witness might explain her testimony on the former trial," and we think the fair construction of the sentence is, that the judge considered and decided the question as one addressed to his discretion. At any rate that is the presumption, and it is for the mover to show, both that the prosecutor had not the legal right to make the inquiry, and that the judge decided that he had. This court can look only to the motion. And we can not see that in this ruling the judge committed any error; while we can see clearly, that if he did, the objector can have received no prejudice from such error.

A new trial ought not to be granted.

In this opinion the other judges concurred.