CHARLES W. HURLBURT ET AL. *vs.* EMIL A. BUSSEMEY
ET ALS.

* Third Judicial District, New Haven, June Term, 1924.
WHEELER, C. J., BEACH, CURTIS, KEELER and KELLOGG, Js.

There is no occasion to correct a finding which contains all facts material to the determination of the questions of law arising in the action.

In an action in the nature of ejectment the plaintiff must rely on the strength of his own title and not on the weakness of the defendant's.

The dimensions or extent of the premises in dispute is a matter of fact to be determined by the trier not only upon the testimony produced

* Transferred from first judicial district.

but also upon his own view of the locus at the invitation of the parties.

In the present case the trial court found that the plaintiffs had no title by deed to the land in controversy. *Held* that upon the facts found this court could not assert that such conclusion was erroneous.

The plaintiffs also claimed title to the locus by adverse possession. *Held* that the evidence disclosed no tenable ground for any such claim.

To acquire a title to land by adverse possession, the ouster must not only be open, visible and exclusive, but it must also continue uninterruptedly for a period of fifteen years without the license or consent of the disseizee.

To render a map admissible in evidence to show the dimensions of the *locus in quo*, its accuracy in these respects must first be verified.

Argued June 5th—decided October 8th, 1924.

ACTION in the nature of ejectment, brought to and tried by the Superior Court in Litchfield County, *Hinman, J.;* facts found and judgment rendered for the defendants, and appeal by the plaintiffs. *No error.*

This action is brought by the plaintiffs to recover possession of real estate and for damages. The property in question is claimed by the plaintiffs to be a portion of a certain piece of land situated in the town of Morris, in Litchfield County, known as "the bar," extending from Deer Island in Bantam Lake to the highway on the westerly shore of this lake.

In 1885 Charles H. Woodruff and others quitclaimed to one Robert E. Hall all of their right, title and interest in and to a piece of land containing about four acres, called "the bar," connecting Deer Island in the Great Pond with the mainland and bounded: west on highway; north and south on Great Pond, east on said island; Great Pond being what was known afterward as Bantam Lake. In 1896 Robert E. Hall, together with his wife, in whom the legal title was then vested, conveyed to Gideon H. Welch Deer Island, bounded "North, East and South by Bantam Lake and West partly by said lake and partly by the bar connecting said Island with

the mainland; also said bar bounded North by Bantam Lake; East by said Island; South by Bantam Lake and West by highway." In 1899 Gideon H. Welch conveyed to Watson M. Hurlburt Deer Island (except certain portions previously sold to other parties) and the bar, the island and bar being similarly described as in deed of Robert E. Hall and wife; and thereafter, in 1900, this property, with the same description, was conveyed to Charles W. Hurlburt, one of the plaintiffs in this present action. On September 28th, 1921, Charles W. Hurlburt gave a quitclaim deed to the W. M. Hurlburt Company, a plaintiff in this action, "of all that certain tract of land . . . lying between the highway and Deer Island and bounded Northerly on Bantam Lake, Easterly on Deer Island, Southerly on Bantam Lake and Westerly on the highway," being the same description of the bar as contained in the immediate previous conveyances.

For many years there had been a single and clearly defined road known as the Island Road or the Bog Road connecting Deer Island with the highway on the westerly shore of Bantam Lake, and in 1914 the W. M. Hurlburt Company conveyed to the town of Morris a strip of land fifty feet wide for highway purposes, extending from the highway on the west shore of Bantam Lake to the shore of Deer Island.

The land claimed by the plaintiffs in the present action is a piece approximately fifty feet in width and one hundred feet in depth lying between the main highway and the west shore of Bantam Lake, the northerly line of this land being approximately three hundred and thirty feet southerly of the roadway connecting the mainland and Deer Island.

During the trial of this cause, by agreement of counsel, the court viewed the premises in question for the purpose of aiding its determination as to what the

bar described in the deeds referred to consisted of, its location and existing conditions.

In or about 1908 one John H. Morrow, who occupied land on the west side of the highway and also claimed to own the locus in question, cleared a passway across it from the highway to the lake, and used the land at the end of a line of stones resembling the foundations or remnants of a stone wall, ranging from two feet to less than a foot high, and extending from near the highway west of the land to the shore of the lake, for landing, storing a boat and canoe, and otherwise made use of the premises until September, 1911, when he gave a deed thereof to one Edward Croft, who gave to the defendant Bussemey a quitclaim deed of this land in question on June 29th, 1921.

In 1914 the defendant Bussemey entered on these premises by authority of the said Edward Croft, cut trees and bushes and erected a garage thereon. While Bussemey was clearing land for the garage in 1914, Watson M. Hurlburt questioned his right so to do and ordered him off the land. Bussemey refused to leave and there was no further interference with his occupancy until a store building was being erected by Bussemey in 1921. He was then notified that this building was on the plaintiff's land, and within a few months this action was instituted. This building was erected for the purpose of engaging in selling ice cream, candy, cigars, cigarettes, soda water, gasoline, and carrying on a general place of amusement for the purpose of dancing, bathing, boating, etc.

At the time this building was erected, the plaintiff Charles W. Hurlburt was engaged in a similar business upon land adjoining the land in question on the north, and the defendants in conducting a store and place of amusement diverted trade which would otherwise have gone to Charles W. Hurlburt's business.

*Edward B. Reiley, Jr.,* and *Ulysses G. Church,* for the appellants (plaintiffs).

*Clayton L. Klein* and *J. Howard Roberts,* for the appellees (defendants).

KELLOGG, J. The plaintiffs seek a correction of the finding in many particulars, both by substituting a large number of the statements contained in their draft-finding for those contained in the finding by the court, and by adding thereto other paragraphs. Many of the statements of facts thus sought to be now incorporated in the finding are covered by the finding and its amendment, and many are not admitted or undisputed facts. Also a very large number of the paragraphs of the draft-finding sought to be incorporated in the finding set forth many of the deeds in the defendants' chain of title to the locus. Inasmuch as the plaintiffs must recover, if at all, by the strength of their own title, and not by the weakness of the defendants' title, as will be discussed more in detail hereinafter, it is not necessary to correct the finding by the addition of these paragraphs. A careful examination of the evidence and of the finding and its amendment leads us to the conclusion that the finding and its amendment contain all material facts, either admitted or undisputed, which are necessary for the determination of all questions of law arising in this action.

As has been said above, the plaintiffs in order to recover in an action in the nature of ejectment must rely upon the strength of their own title, and not upon the weakness of the defendants' title to the premises in question. This has been repeatedly decided in this court and does not admit of question. "In an action in the nature of ejectment, the plaintiff must rely on the strength of his own title and not the weakness of the

defendant's." *Mad River Co.* v. *Pracney,* 100 Conn. 466, 123 Atl. 918; *Center Bridge Co.* v. *Wheeler & Howes Co.,* 86 Conn. 585, 86 Atl. 11; *Moran* v. *Denison,* 79 Conn. 325, 65 Atl. 291; *Cahill* v. *Cahill,* 75 Conn. 522, 54 Atl. 201.

In this action the plaintiffs now claim title by deed and also by adverse possession. The deeds offered in the plaintiffs' chain of title begin with a quitclaim deed from the heirs of Morris Woodruff in 1885, describing the property therein as "a piece of land containing about four acres, called the bar, connecting Deer Island in the Great Pond [Bantam Lake] with the mainland and bounded: West on highway, North and South on Great Pond, East on said Island." By mesne conveyances this property came into the hands of the plaintiffs, and it is claimed by them includes the land in question. It was the duty of the court therefore to determine the extent of this bar, and it relied not only on the evidence produced, but also on its view of the premises with counsel. No clear or accurate testimony was offered by anyone on the part of the plaintiffs showing the exact boundaries or dimensions of the bar, or that it necessarily included these premises in question, and the court must have relied to a considerable extent upon its view of the premises to determine whether or not the plaintiffs had established their claim that the land in question was a part of the bar described in the deeds. The court has found that the plaintiffs have no title by deed to the premises in dispute, and from a careful examination of the evidence and taking into consideration the court's own view of the premises, we cannot hold that it was in error in coming to this conclusion.

The evidence of Gideon H. Welch, the immediate grantor of the plaintiffs, who held the title to the bar from 1896 to 1899, must also have had much influence

in determining the strength of the plaintiffs' title to the premises in question. The description of the property conveyed in 1899 by this witness to Watson M. Hurlburt, of the W. M. Hurlburt Company, included "Deer Island bounded north, east and south by Bantam Lake and west partly by said lake and partly by a bar connecting said island with the mainland; also said bar bounded north by Bantam Lake, east by said island, south by Bantam Lake, west by highway." This witness also testified that during his three years of ownership he never "did anything to claim ownership over or concerning that piece of property now claimed by the defendant Bussemey," and further, "it was never the intention that that bar should be held to include any land on the west side. There was never a word about it, and not a word about it put into the deeds that were drawn."

The plaintiffs in this court also claimed title to these premises by adverse possession. The general rule concerning title by adverse possession is clearly expressed in *Stevens* v. *Smoker*, 84 Conn. 569, 574, 80 Atl. 788: "The essential elements of an adverse possession sufficient to create a title to the land in the adverse possessor are that the owner shall be ousted of possession and kept out uninterruptedly for a period of fifteen years, by an open, visible, and exclusive possession by the adverse possessor, without the license or consent of the owner." "The open, notorious, uninterrupted, continuous, undisputed, peaceable and adverse possession of land for the requisite period under a claim of right will give title." *Rheinfort* v. *Able*, 80 Atl. 1059 (N. J.). "The doctrine of adverse possession is to be taken strictly. Such a possession is not to be made out by inference, but by clear and positive proof." *Huntington* v. *Whaley*, 29 Conn. 391.

The evidence discloses no tenable ground for any

such claim of title by adverse possession in these plaintiffs. In fact, it discloses that in 1908 one John H. Morrow claimed title to and made use of these premises until 1911, when he gave a deed thereof to one Edward Croft, who also occupied and used this property until 1921, and then quitclaimed the same to the defendant Bussemey, whom these plaintiffs are now seeking to oust from possession by this action of ejectment. These facts alone show clearly that there was not an open, visible and exclusive possession by the plaintiffs for fifteen years prior to the institution of this action. Indeed, the evidence discloses that the defendants, with their predecessors in title, have had adverse possession of these premises for nearly the statutory period, without considering their claimed title by deed. The court was not in error in holding that the plaintiffs had not established a title to these premises by adverse possession.

Certain rulings upon evidence by the court during the trial are also claimed by the plaintiffs as grounds of error, as set forth in the 6th, 7th and 8th reasons of appeal.

Inasmuch as the same principles are applicable to the 6th and 7th reasons of appeal concerning the rulings of the court upon the admission of a certain atlas of Litchfield County, exhibit JJ for identification, and to its ruling rejecting a map of the town of Litchfield, exhibit II for identification, these rulings will be taken up together.

Wheaton F. Dowd, clerk of the Superior Court for Litchfield County, was called as a witness for the defendants. Upon cross-examination he identified an atlas of Litchfield County, exhibit JJ for identification, as having been thirty years in the office of the clerk, and further testified that a map in this atlas delineated generally the location of Deer Island, the bar and

roadway thereon, the highway and general surroundings. . No further evidence was offered by the plaintiffs as to whether or not the details of the map were accurately measured and drawn to a scale. This atlas was admitted by the court for the limited purpose of showing the general conditions there, the location of the lake, the island, and the bar, but excluded for the second purpose of the offer, that of showing the scale and dimensions of the island and bar, the plaintiffs duly excepting to the latter part of this ruling. This same witness also testified that a map drawn by one E. M. Woodford in 1862, exhibit II for identification, had been in the office of the clerk for more than thirty years and showed the locus and the lake, highway and bar, but further testified that it was not an accurate representation of the bar and the island. No other evidence was offered by the plaintiffs as to the accuracy of the representation of the bar and the island.

"The use of maps, models, diagrams, and photographs as testimony to the objects represented rests fundamentally on the theory that they are the pictorial communications of a qualified witness who uses this method of communication instead of or in addition to some other method. It follows, then, that the map or photograph must first, to be admissible, be made a part of some qualified person's testimony. Some one must stand forth as its testimonial sponsor; in other words (as commonly said), it must be verified." 2 Wigmore on Ev. (2d Ed.) § 793. "The true rule as to receiving documents, ancient or otherwise, in evidence is conceived to be this: the party offering the paper must make out a prima facie case for its reception; he must show the paper is apparently as he contends." *Lawrence* v. *Tennant,* 64 N. H. 532, 539, 15 Atl. 543. In this State the case of *Free* v. *James,* 27 Conn. 77, is quite in point with the question now considered. In

that case the plaintiffs claimed title to the land in question from their grandfather, and the question pertained wholly to the location of the dividing line between the land of the plaintiffs and that of the defendant. The plaintiffs offered in evidence a survey of the lot made by one of the distributors of the grandfather's estate thirty years prior to trial of the cause. The court says: "The sketch or map, offered in evidence by the defendant, was properly rejected by the court. It is true that it appears to have been made by a competent surveyor, judging from the fact it was signed by him; but for what purpose, and on what occasion, does not appear; and whether it was made from any actual survey of the land, or the facts contained in it were collected from the contents of deeds and other documents, cannot be known . . . it is enough to say that it was in no way authenticated as a correct map of the land; and it would be going further than we have any authority for doing to receive it as evidence in the case." There was no error in admitting for a limited purpose only the atlas offered, nor in rejecting the Woodford map.

The plaintiffs offered in rebuttal certain portions of the land records of the town of Litchfield, purporting to be a report of the committee on laying out certain lands therein to the proprietors, and a record of a deed of the original proprietors of the town, in which town the land in question was located before the separation of the town of Morris. These records were offered for the purpose of showing what the original owners and the original proprietors of the town of Litchfield regarded as a portion of the bar, and as showing the dimensions of the same. The defendants objected to the admission of these records as not proper rebuttal, and they were excluded by the court upon this ground.

It is quite clear that these records appertained to the plaintiffs' case in chief, and were so considered by

plaintiffs' counsel (record p. 64), although they were also claimed as rebutting evidence offered by the defendants. From our earliest decisions the time and order of admitting evidence in the trial of a cause are subject to the discretion of the court; and the exercise of such discretion cannot be reviewed in this court. *Doane* v. *Cummins,* 11 Conn. 152; *State* v. *Alford,* 31 Conn. 40; *Stirling* v. *Buckingham,* 46 Conn. 461; *Dubuque* v. *Coman,* 64 Conn. 475, 30 Atl. 777; *Mechanics Bank* v. *Woodward,* 73 Conn. 470, 51 Atl. 1084; *McAllin* v. *McAllin,* 77 Conn. 398, 59 Atl. 413; *State* v. *Buonomo,* 88 Conn. 177, 90 Atl. 225; *Dimon* v. *Romeo,* 99 Conn. 197, 121 Atl. 332. See elsewhere: 1 Greenleaf's Evidence, § 431; *Commonwealth* v. *Eastman,* 55 Mass. (1 Cush.) 189, 217; *Howard* v. *Norton,* 65 Barb. (N. Y.) 161; *Snook* v. *Lord,* 56 N. Y. 605.

There is no error.

In this opinion the other judges concurred.