[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 5497
The plaintiff has filed a four count complain alleging that it is he owner, and has been in possession of a piece of land in Kent, Connecticut containing 70.21 acres, more or less; that the defendant has trespassed upon the land and has attempted to claim it as his own; and finally that the plaintiff now has sole and exclusive title to the premises by adverse possession. The plaintiff seeks in his case a judgment settling and quieting title in the plaintiff.
The defendant has denied these allegations, and in a counterclaim alleges that he is the absolute owner and in possession of the premises; that the plaintiff has relocated Gorham Road, so as to deprive the defendant of access from Gorham Road to the property owned by him abutting such highway, and has established and retained ownership of strips of land that serve only to deprive the defendant of access from his land to Gorham Road. The defendant seeks a judgment quieting title in the 70.21 acre piece, and a judgment declaring that the reserve strips are against public policy, and that the defendant and his heirs, assigns and successors have the right to pass across such strips to and from Gorham Road. The plaintiff has denied the material allegations of the counterclaim.
After reviewing the oral testimony elicited during trial and the exhibits introduced into evidence, and having evaluated the credibility of the various witnesses, the court first has to determine if either the plaintiff or the defendant has proved record ownership in the premises. In order to make this determination, the court has examined deeds and probate records going back approximately 125 years. Such documents do not have the clarity and production line precision of modern documents, especially when examined 100 years after execution. In order to clearly draw the necessary picture and to establish an accurate history of record title to the premises, the court has had to apply certain legal principles to its interpretation of these documents. Among these principles are the following: CT Page 5498
1. Title to real estate vests immediately at death in a deceased's heirs, or in devisees, upon admission of the will to probate. Cardillo v. Cardillo, 27 Conn. App. 208,212 (1992).
2. The recording of a probate certificate of devise or descent is necessary only to perfect marketable title. . . . Such a probate certificate is not a muniment of title, however, but merely a guide or pointer for clarification of the record. Id., pg. 212.
3. A devise that purports to convey all the real property of the testator is so construed unless it clearly appears by his will that he intended otherwise. Conn. Gen. Statutes, Sec. 45-160a.
4. A mere chain of deeds alone will not establish ownership in land, there must be a connection back to a source of title, who, at the time of conveyance was owner of the land conveyed. Steven v. Smoker, 84 Conn. 569,573, 574 (1911).
 5. It is the law of this State that ownership of real property carries a right of possession as much as the ownership of personal property, and ownership in one case draws after it possession as much as in the other. The possession involved in the fact of ownership is sufficient, if the land was not in the actual exclusive occupation of another. A mere paper chain of title in the plaintiff does not establish his ownership of the land, unless his possession or that of his grantors is shown. But evidence of actual possession is unnecessary if the jury is satisfied, by documentary or other evidence, of ownership of any of the plaintiff's predecessors in title, since title thus established draws with it possession in the absence of any evidence to the contrary. CT Page 5499
The instructions were in harmony with the repeated declarations of this court and correct. Foote v. Brown,81 Conn. 218, 225, 226 (1908).
6. Where boundaries of land are described by known and fixed monuments which are definite and certain, the monuments will prevail over courses and distances.Velsmid v. Nelson, 175 Conn. 221, 227, 228 (1978).
7. Where the issue of title or ownership is directly involved, the proper way to prove title is by the production of the original documents or certified copies from the record, unless a sufficient foundation is laid for the production of secondary evidence. Id., pg. 229.
8. One claiming title to real property must rely on the strength of his own title, and not on the weakness of another's title. Hurlburt v. Bussemey, 101 Conn. 406,410 (1924).
9. Any conveyance or lease, for any term, of any building, land or tenement, of which the grantor or lessor is ousted by the entry and possession of another, unless made to the person in actual possession, shall be void. Conn. Gen. Stat., Sec. 47-21. Possession necessary to constitute an ouster under this section is possession that would, if continued for the requisite period, ripen into title by adverse possession. The essential elements of an adverse possession sufficient create title to the land in the claimant are that the owner shall be ousted of his possession and kept out uninterruptedly for a period of fifteen years, by an open, visible and exclusive possession by the claimant without the license or consent of the owner. WadsworthRealty Co. v. Sundberg, 165 Conn. 457, 465 (1973).
10. The receipt of rents and profits is insufficient of itself to prove an ouster. Averill v. Sanford,36 Conn. 345, 347 (1870).
11. The interpretation and construction of deeds is a question of law for the court to determine. Mad RiverCo. v. Pracney, 100 Conn. 466, 472, 473 (1924). CT Page 5500
PLAINTIFF'S RECORD TITLE
The plaintiff claims on page 26 of plaintiff's brief, dated December 6, 1993, that it "has satisfied burden of ownership by record title and possession, see plaintiff's exhibits 1-7." A review of the documents by which plaintiff claims record title, and of the evidence surrounding these documents, show that they do not prove such record title. They show a conveyance no plaintiff's predecessor in title of 546 acres, more or less, all of which was north of Old Gorham Road. The 70.21 acre piece which is the subject premises of this case, is located south of Old Gorham Road, and therefore was not part of the 546 acres. The 546 acres were conveyed "subject to such state of facts as an accurate survey and/or physical inspection of the premises may reveal." Samuel P. Bertaccini, Jr., the surveyor employed by the plaintiff to prepare a Class A-2 survey of the 546 acres, determined and testified that all of the 546 acres were located north of Old Gorham Road, and that the plaintiff had no record title to the 70.21 acre piece in question, which is south of Old Gorham Road. The court accepts this testimony of Mr. Bertaccini.
The court finds that the plaintiff has not proved record title to the subject premises.
ADVERSE POSSESSION BY PLAINTIFF
The plaintiff further claims that it has sole and exclusive title to the premises by adverse possession.
The doctrine of adverse possession is to be taken strictly. It is not to be made out by inference, but by clear and positive proof. "Clear and positive proof" embodies the same substantial standard as "clear and convincing proof." Schulz v. Syversten, 219 Conn. 81, 91
(1991); Wildwood Associates, Ltd v. Esposito, 211 Conn. 36,42, n. 3 (1989).
The burden of clear and convincing proof is sustained if evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that CT Page 5501 they are false or do not exist. Id., pg. 42.
 The essential elements of an adverse possession sufficient to create title to the land in the claimant are that the owner shall be ousted of his possession and kept out interruptedly for a period of fifteen years, by an open, visible and exclusive possession by the claimant without the license or consent of the owner.
Wadsworth Realty Co. v. Sundberg, supra 465.
On June 15, 1958, Newman M. Marsilius, Jr. and Norman K. Parcells bought the 546 acres, which they erroneously thought included the 70.21 acre piece south of Old Gorham Road. From 1958 through 1986, Mr. Marsilius visited the area about twenty days a year. Mr. Parsells was there about once a week. They occasionally walked on the subject piece, and occasionally cross-country skied on it. For about a year in 1980 and 1981, Marsilius and Parsells hired Connwood Inc. to harvest white oak lumber, and Keith Potter to remove topwood left by the logging operation. This operation left about 100 stumps and two logging roads or trails. The Connwood company experienced difficulties in locating and marking the boundaries to the subject piece.
On December 30, 1986, Marsilius and the Executrix of the Estate of Norman K. Parsells sold the 546 acres to John Marvin, Trustee for the principals of the plaintiff, and on April 5, 1989, he conveyed it to the plaintiff. On May 21, 1988, Marsilius purported to convey his interest in the 70.21 acre piece to Marvin, Trustee who conveyed it to the plaintiff on August 21, 1989. The Executor of the Parsells Estate purported to convey her interest in the 70.21 acre piece to the plaintiff on January 25, 1989.
There has been evidence of identifying marks having been placed at various points along the boundaries of the subject premises, as well as No Trespassing signs. The evidence is not clear as to who put such marks, or when hey were placed. The impact of all the evidence in this regard, taken as a whole, is not sufficient to establish CT Page 5502 adverse possession in the plaintiff.
The 1980-81 logging operations, which ended in 1981, never to be resumed, coupled with the assertion of ownership, is not enough to establish a visible and exclusive possession for fifteen years.
In considering all the bases of the adverse possession claim of the plaintiff, the court finds that the evidence taken as a whole, does not establish by clear and convincing proof that the plaintiff and its predecessors in title had for art uninterrupted period of fifteen years, a sufficiently open and visible possession of the premises to create title by adverse possession. The plaintiff has not proved a continuous definite possession; it has not proved that it made evident the extent of is possession, or a possession notorious enough for the requisite fifteen years so as to amount to a notice to the world that the plaintiff is saying by those actions that the property belongs to the plaintiff.
The burden of proof by clear and convincing proof is a heavy one; the plaintiff has not sustained it. It is certainly true that the logging operation in 1980-81 was open and notorious; however, it ended in 1981 and there is no evidence that the plaintiff made any effort to repeat it, so it has not been continuous.
DEFENDANT'S RECORD TITLE
On May 23, 1866 (Def's Ex. 1), Burritt Eaton took title to a parcel of land south of land of Stephen Snediker and Old Highway, sixty acres, more or less.
On February 26, 1867 (Def's Ex. 2), Burritt Eaton conveyed to David B. Fuller a piece, fifty (acres), "more or less, it being part of lot of land conveyed to me. . . . May 25, 1867." There was no other conveyance by Burritt Eaton, and despite the discrepancy in acreage and the reference in the deed that the conveyance was only part of the land that had been conveyed to Eaton, the court finds that these premises are the subject premises. This conclusion is based on the fact that calls for adjoining owners in the deed are reconcilable with ancient and present adjoiners and with surveys of CT Page 5503 adjoining properties, and is further based on the testimony of William Wynott, who searched the title to the subject premises.
David Fuller never conveyed this piece, nor was his estate probated. His wife, Jerusha Fuller, his daughter Mary S. Peet, and Mary's husband, William H. Peet survived him. Mary and William quitclaimed their interest in David Fuller's estate to Jerusha Fuller, (Mary's mother and David's widow), on December 23, 1882 (Def.'s Ex. 3), thereby placing title in her.
When Jerusha Fuller died in January, 1892, the premises passed by her will (Def.'s Ex. 4) to her grandson, Frank Starr Peet, subject to a life use of one-half of her estate in her daughter Mary. Mary's husband, William Peet, came into actual possession of the subject premises because of Mary's life use; he is referred to as a southerly abutter to the Snediker land in 1895 in Def.'s Ex. 23. The Certificate of Devise dated November 14, 1892 (Def.'s Ex. 67) shows that two parcels were Frank S. Peet, the second of which was described as:
 . . .The second piece containing 3 acres more or less bounded on the north by land of Uriah F. Snediker on the east of. . .Pleasant south by land of Nelson Dwy and west by land of Nelson Dwy.
The court accepts the testimony of William Wynott, surveyor and title searcher, who determined that this second piece, even though it was described as 3 acres, more or less, was the subject premises, and that the 3 acre reference was an error and should no control. Mr. Wynott's conclusion was based on the fact that he found no deed out of Jerusha Fuller; in that the 3 acre reference could not be reconciled with the calls for the adjoining owners, and that those calls, which are record monuments and therefore controlling over the number of acres description, are reconcilable with both historical and current adjoiners as well as with the existing surveys of the adjoining properties. The subject premises also passed under Jerusha Fuller's will to Frank S. Peet, subject to the above life use, in accordance CT Page 5504 with Conn. Gen. Stat. Section 45a-261, which provides that:
 Every devise purporting to convey all the real property of a testator shall be construed to convey all the real property belonging to him at the time of his decease, unless it clearly appears by his will that he intended otherwise.
After acquiring the subject premises in 1892, Frank S. Peet died on December 10, 1944, still owning it. In his will, it passed to his son, Frank H. Peet, subject to a life use in his widow, Annie B. Peet. In the Certificate of Devise, dated January 21, 1947, the premises are described as:
 Third Piece; Wood lot near Spectacle Lake; exact bounds not known; estimated to contain forty to fifty acres.
On April 7, 1950, Annie B. Peet conveyed her life use to her son, Frank H. Peet, so that he then owned the fee unencumbered. He did not convey these premises, and he died on May 16, 1964, leaving a will in which he devised his entire estate to his widow, Clara B. Peet. The subject premises were not probated through his estate, but passed as a matter of law to his widow, Clara B. Peet. Conn. Gen. Stat. 45a-261; Santi v. Rago,186 Conn. 360, 365 (1982). Her family, including the defendant, who is her grandson and Edna Peet, his mother, were generally aware that Clara's property included a piece of land in the vicinity of North Spectacle Lake, and in late 1987, they decided to try to ascertain the exact location of this land. Their surveyor identified the piece, and determined that Clara B. Peet was the owner.
On February 19, 1987, Clara B. Peet conveyed the title to this land which she had received under the will of Frank H. Peet to the defendant in this case, Roger K. Peet. However, the plaintiff claims that even if Clara B. Pee did own the piece in question, she conveyed it Edna C. Peet on August 3, 1967, and therefore could have conveyed it to the defendant. In order to support CT Page 5505 this claim the plaintiff introduced an August 3, 1967 deed from Clara B. Peet to Edna C. Peet. (Pl.'s Ex. 16). This deed has a fundamental and insoluble inconsistency in its description. It is clear that the intent of the grantor was not to convey two parcels of land; part of the description which begins "all that certain piece, parcel or tract" and that part which begins "said tract is bounded as follows:", describe a 30 acre definite piece of land which is entirely separate from the piece referred to in the deed as "Being the same premises as", etc., which is the 70 acre piece in question in this case. The court must determine if the 70 acre piece was conveyed in this deed. The court notes parenthetically that even if this deed does convey the 70 acre piece to Edna Peet, that does nothing to support plaintiff's claim to title, because to establish title, the plaintiff must rely on the strength of his own title, and not on the weakness of the defendant's title.Hurlburt v. Bussemey, supra, 410.
In an early Connecticut case, a factual situation comparable to the issue in this case arose. There were different descriptions of the granted premises, but the court determined that the grantors did not thereby intend to convey different and additional parcels of land, but rather intended to describe the same land. The question was which description should control?
 The principle is, that the least certainty of description in deeds must yield to the greater certainty, unless the apparently conflicting descriptions can be reconciled.
Benedict v. Gaylord, 11 Conn. 332, 335-336 (1836).
The description in its first two parts has a greater certainty than in its third part. It describes a particular number of acres (30 more or less), it refers to two monuments and to abutters by name. It is also shown clearly on the map which is Def.'s Ex. 43B.
The third part of the description refers only to a Certificate of Devise and a quit-claim deed, and is materially less certain. At the time this deed was executed, it is probable that Clara B. Peet had only a CT Page 5506 vague idea where his piece was and even less knowledge of its dimensions.
Although it is true that here is no record title to the 30 acre piece in Clara B. Peet, that is not enough to overcome the a lack of evidence that she intended in her deed of August 3, 1967, to convey the 70 acre piece.
The plaintiff argues that Edna C. Peet's failure to dispute that Clara B. Peet's deed conveyed the 70 acre parcel to her is a judicial admission that it did convey it.
The fact that Edna C. Peet didn't testify that she didn't own the 70 acre piece, is not evidence that she did own it. If it was conveyed to her she owned it, if it was not, she didn't.
Because Edna C. Peet is not a party to this case, she cannot make a judicial admission. It isn't an evidentiary admission either, because she is not a party.
 A judicial admission is `"[a]n express waiver made in court or preparatory to trial, by the party or his attorney, conceding for the purposes of the trial the truth of some alleged fact, . . . ."'. Futterlieb v. Mr. Happy's Inc., 16 Conn. App. 497, 504 (1988).
The plaintiff claims that the defendant made a "fatal error" by admitting on page 7 of its brief that "the actual intention of both parties must control as manifested in the deeds exchanged and the circumstances surrounding them. Gray v. Hudson, 34 Conn. Sup. at 41."
The Gray case involved a deed from a grantor to a grantee, with a purchase money mortgage back to the grantor from the grantee, and with a claim that the grantee had a secret intention. The court does not consider the Gray case relevant to the instant case, except as a general statement of the law. Furthermore, on April 16, 1968, only eight months after the date of Ex. 16, Edna C. Peet conveyed out the 30 acre piece as described in Ex. 16, except that the reference to the wood lot was eliminated (Def.'s Exhibits 41 and 41 [42]). In CT Page 5507 the absence of any evidence that Edna Peet's title to this 30 acre piece came from a deed after August 3, 1967 (Ex. 16), the court considers defendant's exhibits 41 and 42 as evidence that she believed that plaintiff's Ex. 16 was intended to give her title to the 30 acre piece, thereby supporting the conclusion that plaintiff's Ex. 16 did not convey title to the 70 acre piece to her.
The court finds that the plaintiff has not proved that the deed from Clara B. Peet to Edna C. Peet conveyed title to the 70 acre piece. The defendant has good record title to the 70 acre piece in question, and the plaintiff has no title to that piece, either by record or by adverse possession.
The plaintiff asserts that the defendant's claim of ownership fails because he didn't prove possession, and because his grantor, Clara B. Peet, was ousted of possession at the time of her deed to the defendant. The plaintiff cites a number of cases and Section 47-21 of the Conn. Gen. Stat. as authority.
However, as stated in the Wadsorth [Wadsworth] case, cited by the plaintiff;
 The possession necessary to constitute an ouster under § 47-21 is not some fleeting or ephemeral technical invasion of the property. . . . .Rather, it is possession of a character such that it would if continued for the requisite period, ripen into a title by adverse possession.
Wadsworth Realty Co. v. Sundberg, supra 465. Under this definition, as previously indicated in this decision in the discussion of adverse possession, no ouster of Clara B. Peet occurred.
Insofar as the defendant's possession is concerned, actual possession is unnecessary.
The possession involved in the fact of ownership is sufficient, if the land was not in the actual exclusive occupation of another. Foote v. Brown, 81 Conn. 218, 225
(1908). CT Page 5508
The defendant's predecessors in title owned this land and there was no actual exclusive possession of another.
RESERVE STRIP
The defendant seeks a declaratory judgment that the reserve strip established by the plaintiff along Gorham Road is against public policy and that the defendant, his heirs, successors and assigns have the right to pass over this strip for access to and from the public highway.
The plaintiff has built a new road, known as Gorham Road, to the north of Old Gorham Road. This road has been dedicated as a public road. The plaintiff has reserved a continuous strip of land along the entire Old Gorham Road frontage of the 70 acre piece. This strip does not constitute a building lot.
Since the court has decided the issue of ownership of the 70 acre piece in favor of the defendant, this strip prevents the defendant from access to land dedicated to the Town of Kent as a highway.
In its subdivision regulations the Town of Kent provides:
 23.12 PRIVATELY OWNED RESERVE STRIPS: No privately owned reserve strips which control access to land dedicated or proposed to be dedicated to the Town of Kent shall be permitted.
The reserve strips between the 70 acre piece and relocated Gorham Road serve no legitimate interest of the plaintiff; instead they do nothing more than to prevent the defendant from having access from his land to Gorham Road. They violate Section 23.12 of the Town of Kent subdivision regulations, and are against public policy.
CONCLUSION
Judgment is entered in favor of the defendant on each count of the complaint, and in favor of the defendant on the First Count of the Counterclaim. CT Page 5509
Judgment is entered for the plaintiff on the Second Count of the Counterclaim. The defendant did not brief this claim in its post trial memorandum, nor was there sufficient evidence to sustain the defendant's burden of proving its claim by a fair preponderance of the evidence.
A declaratory judgment is entered on the Third Count declaring that the reserve strips created by the plaintiff along Gorham Road are against public policy and that the defendant, his heirs, and successors and assigns have the right to pass and repass across these strips in order to have access to the relocated Gorham Road.
RICHARD A. WALSH, J.