FEE *v.* LEATHERWOOD.

5-2198                                                    340 S. W. 2d 397

Opinion delivered Nov. 28, 1960.

*McMillen, Teague & Coates,* by *Eugene F. Mooney, Jr.,* for appellant.

*Robert B. Gibson,* for appellee.

PAUL WARD, Associate Justice. In February, 1958, W. C. Leatherwood and B. C. Castleberry (appellees) filed a suit against appellants to quiet title to 342 acres of timber land located in Section 16, Township 13 South, Range 3 West, in Desha County. It was alleged that Leatherwood had acquired title to said lands by adverse possession for more than 7 years. Appellants lay claim to the land by inheritance from one Mamie Kone Fee, who was the fee owner of said land at the time of her death in 1931. Two of the appellants are the grandchildren of said Mamie Kone Fee and the other appellant is their mother, who was also the wife of the son of the said Mrs. Fee.

For clarity and convenient reference we divide the subject lands into three separate groups as set out below:

GROUP I. The South One-half of the Northeast Quarter, 80 acres; all of the Southeast Quarter of the Northwest Quarter east of the railway track and highway No. 65, approximately 30 acres.

GROUP II. The Southwest Quarter of the Northwest Quarter, 40 acres; all of the Northeast Quarter of the Northwest Quarter lying west of the said railway and road, 22 acres; all of the Southeast Quarter of the Northwest Quarter lying west of said railway and road, approximately 10 acres.

GROUP III. The North half of the Southeast Quarter, 80 acres; Southwest Quarter of the Southeast Quarter, 40 acres; Northeast Quarter of the Southwest Quarter, 40 acres.

At the conclusion of the trial the court confirmed the title in appellees to all of the land in Group III. Ap-

pellants have not appealed from this portion of the decree, and so these lands are no longer in litigation.

The title to the lands in Group II was quieted, subject to certain restrictions to be noted later, in Jane Day Fee (one of the appellants) to an undivided one-half interest, and in appellees to an undivided one-half interest. Appellants appealed from that portion of the decree giving only a one-half interest to Jane Day Fee, but appellees have not appealed from that portion of the decree giving a one-half interest to Jane Day Fee. We will later discuss appellants' appeal in this connection.

The trial court quieted title in appellees to all of the lands in Group I. The principal arguments of appellants are directed to a reversal of this portion of the chancellor's decree. To better understand the issues involved in this connection, it is necessary to set forth a summary of the factual background and portions of the testimony.

As heretofore stated the title to this 342 acres of timber land was held in fee by one Mamie Kone Fee, who died in 1931. Beginning about the time of her death and for several years thereafter all of the lands forfeited for taxes and were never redeemed. The forfeiture of the lands in Group III was by a valid description, but the remainder of the lands were described by an invalid description, being described only as a part of the North One-half of the Section. Mrs. Mamie Kone Fee, who died intestate, left surviving her one son, Edward S. Fee, Sr., who died intestate in 1942. Edward S. Fee, Sr., left surviving him his widow and a son and daughter, named Edward Fee, Jr., and Jane Day Fee, respectively. It is important to note that Jane Day Fee was born in 1937.

In 1931 Alex White moved onto the land and built a small house on the lands in Group I. It appears from the evidence that this house was perhaps surrounded by three or four acres of cleared land. In addition to this, White cleared and cultivated approximately thirty acres of land, but no definite description of this thirty acres is

contained in the record. In addition to the above, it appears that White also cleared and pastured an additional parcel of land consisting of approximately eleven acres, to which no definite description is in the record. Alex White was joined in this occupancy by a woman named Ella Williams. They occupied the lands together until 1945 or 1946 when White died. In the meantime a third party had bought the tax title to the forfeited lands and this party, by means of certain negotiations with Ella Williams, succeeded to her rights in the occupancy of the lands. Appellee, Leatherwood, derives his title through this third party. (It is noted here that Castleberry became a party to the suit and is now one of the appellees by virtue of the fact that he has a contract to buy the lands from Leatherwood.)

It is because of this adverse occupancy by Alex White and his privies for a period of 7 years (beginning in 1931) that Leatherwood now claims title to the lands in question. In addition to the occupancy of the lands by Alex White and Ella Williams, appellees and their privies entered upon the lands more than seven years before filing suit and have continuously occupied and improved all of it up until this time. This fact is not seriously controverted by appellants.

The above factual situation poses the following problems: (a) If the nature of the occupancy by Alex White and Ella Williams for the period from 1931 to 1938 or '39 was sufficient to vest title in them to all the lands in Group I then the Chancellor was correct in so holding. This would be true because Jane Day Fee would have no right which she could assert, since her father would have lost the land. (b) If, however, the adverse occupancy by White and Williams was not sufficient to extend to all of the lands but only to the lands to which they actually occupied (the home, the thirty acres and the eleven acres) then appellees would have to rely on ''the latter period of adverse occupancy.'' In this event, however, Jane Day Fee would still have an existing interest in the lands because she had not reached the age of twenty-one when this

suit was filed, and the statute had not run against her. See: *Jackson* v. *Cole,* 146 Ark. 565, 226 S. W. 513.

(a) It is our conclusion that the Chancellor erred in holding that the adverse occupancy of White and Williams extended to all of the lands in Group I. It is conceded by appellees that White and Williams were not occupying the land under color of title and the record reflects that the lands in Group I were not enclosed by a fence. Except for the three parcels of land mentioned above, there is no showing of actual or pedal possession of the lands in Group I, by White and Williams. It was shown that White cut some timber and hauled if off in a wagon or cart, but it was not shown to have been continuous for seven years or that it was co-extensive with the land. Under these circumstances, there being no color of title, the occupancy of the said parcels of land did not extend to the rest of the lands in Groups I and II. The law in this respect is well settled.

In the case of *Bradbury* v. *Dumond,* 80 Ark. 82, 96 S. W. 390, 11 L. R. A. (N. S.) 772 the court said: ''Color of title is not necessary to give title by adverse possession, *but it is necessary to extend the title acquired beyond the limits of the actual possession.''* (Emphasis supplied.) In the case of *Dickson* v. *Sentell,* 83 Ark. 385, 104 S. W. 148, the court was dealing with adverse possession based on an indefinite description, and the court said: ''This description is so vague that it does not constitute color of title, so that possession of part will be considered possession of the whole.'' Likewise in the case of *Bailey, Trustee* v. *Martin,* 218 Ark. 513, 237 S. W. 2d 16, the court reaffirmed the rule in the *Bradbury* case *supra.* In *Cooper* v. *Cook,* 220 Ark. 344, 247 S. W. 2d 957, the court announced the rule in these words: ''It is well settled by our decisions that while color of title is not necessary to give title by adverse possession, it is required to extend an actual possession of a part of a tract of land constructively over the rest of it. Thus the adverse possession of appellees in the case at bar is limited to the land they actually occupied.''

(b)   Appellants do not appear to seriously contend that the adverse occupancy of appellees and their predecessors for a period of seven years immediately before this suit was filed was not sufficient to give them title to all of the lands in Groups I and II including the three parcels actually occupied by White and Williams but, if so, we find from the record that such occupancy was sufficient. Nor can appellees successfully contend that such occupancy barred the rights of Jane Day Fee, who was not of age when the suit was filed. See: *Jackson* v. *Cole, supra.* It is contended however by appellants that since Jane Day Fee could successfully defend, her right to do so extends to her brother and mother. We cannot agree with this contention on the part of appellants since the lands in question were not a homestead, and since they were co-tenants. See: *Jackson* v. *Cole, supra* and 43 C.J.S. § 32 page 100. Furthermore this is not a suit to redeem.

From what we have said above we have reached the conclusions hereinafter set out. (1) Appellees' title should be quieted to the three parcels of land actually occupied by White and Williams. It will be appropriate however for the trial court, on remand, to see that these parcels are located and definitely described. (2) As to the remaining lands in Group I, Jane Day Fee should have her title confirmed to an undivided one-half interest, and likewise an undivided one-half interest in the same lands should be quieted in appellees. (3) For the reasons heretofore set out the trial court was correct in the disposition it made of the lands in Group II, and in refusing to make any award to the mother and brother of Jane Day Fee.

We mentioned heretofore that the trial court gave Jane Day Fee an undivided one-half interest in the lands in Group II with certain reservations. These reservations by the court were that Jane Day Fee took title "subject to the betterment and tax payments of the plaintiff." The court itself reserved this issue for future consideration. Also, in view of the charge which we have made in that portion of the decree dealing with the lands in Group I, the trial court should further consider the question of

"betterment and tax payments" pertaining to the lands in that group.

The decree of the trial court is therefore affirmed in the respects above indicated, and it is reversed in other respects as heretofore set out, and the cause is remanded for further proceedings relative to the matters heretofore mentioned.

GEORGE ROSE SMITH, J., not participating.