ACMAT CORPORATION *v.* GREATER NEW YORK
MUTUAL INSURANCE COMPANY
(AC 25099)

Dranginis, Flynn and West, Js.

Argued January 18—officially released April 12, 2005

*Joel M. Fain,* with whom was *Trenton C. Haas,* for the appellant (defendant).

*John W. Lemega,* with whom was *John C. Pitblado,* for the appellee (plaintiff).

*Opinion*

WEST, J. The defendant, Greater New York Mutual Insurance Company (Greater New York), appeals from the judgment of the trial court, rendered following a trial to the court, declaring that Greater New York issued to the plaintiff, ACMAT Corporation, an insurance policy providing comprehensive general liability and products liability coverage with specified liability limits during the period from January 1, 1964, to January 1, 1968. On appeal, Greater New York claims that the court improperly concluded that (1) it possessed subject matter jurisdiction to render a declaratory judgment, (2) the allegations in the complaint stated a valid ground for declaratory relief and (3) the plaintiff presented sufficient evidence to prove the existence of the insurance policy. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to Greater New York's appeal. In 1950, Waldvogel Brothers, Inc., a New York corporation, loaned money to Henry Nozko, Sr., to form Acoustical Materials Corporation, a business engaged in the installation of acoustical ceilings in commercial buildings. Located in East Hartford, Acoustical Materials Corporation was a subsidiary corporation of Waldvogel Brothers, Inc., until 1969, when Waldvogel Brothers, Inc., was dissolved. Nozko purchased the stock of Acoustical Materials Corporation and, in 1972, changed its name to ACMAT Corporation. Since 1988, the plaintiff has been named as a defendant in numerous lawsuits by individuals alleging bodily injuries, dating back to the 1950s, that resulted from exposure to asbestos in the plaintiff's workplaces. Facing potentially serious liability, the

plaintiff undertook an exhaustive search of its records to ascertain whether Greater New York provided insurance coverage applicable to the injuries that formed the basis of the lawsuits. Although the plaintiff was unable to locate any insurance policies issued by Greater New York, it did discover, among other documents, a certificate of insurance, signed by an authorized representative of Greater New York, that listed Acoustical Materials Corporation as the named insured. The certificate indicated that Acoustical Materials Corporation had in effect with Greater New York, through January 1, 1966, a products liability and comprehensive general liability policy (number 17-C3-C00627) with bodily injury limits of $500,000 per person and $1 million per accident. Confronted with the certificate and a request that it participate in the plaintiff's defense in the asbestos lawsuits, Greater New York conducted its own search for evidence of the policy, following which it denied that the policy ever existed and refused to tender a defense.

In light of Greater New York's refusal, the plaintiff filed this action seeking, inter alia, declarations that Greater New York had issued to Acoustical Materials Corporation an insurance policy that provided comprehensive general liability and products liability coverage with liability limits of $500,000 per person and $1 million per accident, and that the policy was in full force and effect during the period from January 1, 1964, to January 1, 1968. In its answer, Greater New York denied the policy's existence.

Following a two day trial to the court, at which the plaintiff called five witnesses and introduced several exhibits, the court issued a memorandum of decision, declaring in relevant part: "The court declares, by way of this judgment, that the defendant . . . issued to the plaintiff . . . an insurance policy numbered 17-C3-C00627, which provided comprehensive general liability

and product liability coverage to [the plaintiff], with the policy in effect beginning January 1, 1965, to January 1, 1966, and it also provided limits to its liability of $500,000 per person and $1 million per accident. This policy and/or its similar predecessors and successors were validly issued by the defendant . . . to the plaintiff . . . and were in full force and effect from January 1, 1964, through January 1, 1968." This appeal followed.

## I

Greater New York first claims that the court improperly concluded that it possessed subject matter jurisdiction to render a declaratory judgment. It argued that the declaration the plaintiff sought did not settle the parties' dispute or prove the existence of a right, power, privilege or immunity and there was no justiciable controversy before the court. We disagree with that claim.

"As a threshold matter, we set forth the applicable standard of review for a claim challenging a trial court's subject matter jurisdiction. A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Nationwide Mutual Ins. Co.* v. *Allen*, 83 Conn. App. 526, 531, 850 A.2d 1047, cert. denied, 271 Conn. 907, 859 A.2d 562 (2004).

An action for declaratory judgment is a special proceeding under General Statutes § 52-29,[1] implemented by Practice Book §§ 17-54 and 17-55. *Rhodes* v. *Hartford*, 201 Conn. 89, 92, 513 A.2d 124 (1986). It "provides a valuable tool by which litigants may resolve uncer-

[1] General Statutes § 52-29 (a) provides in relevant part: "The Superior Court in any action or proceeding may declare rights and other legal relations on request for such a declaration, whether or not further relief is or could be claimed. . . . "

tainty of legal obligations." *Milford Power Co., LLC* v. *Alstom Power, Inc.*, 263 Conn. 616, 625, 822 A.2d 196 (2003). "Our Supreme Court has frequently pointed out that the statutes and rules pertaining to declaratory judgments create an independent remedy and should be accorded a liberal construction. As stated in *Sigal* v. *Wise*, [114 Conn. 297, 301, 158 A. 891 (1932)], [t]he statute authorizing the Superior Court to render declaratory judgments is as broad as it well could be made." (Internal quotation marks omitted.) *Colonial House, Inc.* v. *Connecticut State Board of Labor Relations*, 23 Conn. Sup. 30, 34, 176 A.2d 381 (1961). Indeed, "[o]ur statute, which antedated the Uniform Declaratory Judgments Act, is broader in scope than that act and the statutes in most, if not all, other jurisdictions." *Connecticut Savings Bank* v. *First National Bank & Trust Co.*, 133 Conn. 403, 409, 51 A.2d 907 (1947).

"Notwithstanding this liberal heritage, [our Supreme Court] has repeatedly stated that a declaratory judgment action is not a procedural panacea for use on all occasions but is a special statutory proceeding to be used only in accordance with the statute and rules adopted to implement the statute . . . ." (Internal quotation marks omitted.) 2 E. Stephenson, Connecticut Civil Procedure (3d Ed. 2002) § 226 (d), p. 583. The rules of practice define the scope of declaratory judgment actions as follows: "The judicial authority will, in cases not herein excepted, render declaratory judgments as to the existence or nonexistence (1) of any right, power, privilege or immunity; or (2) of any fact upon which the existence or nonexistence of such right, power, privilege or immunity does or may depend, whether such right, power, privilege or immunity now exists or will arise in the future." Practice Book § 17-54.

Greater New York argues that the court lacked subject matter jurisdiction to render a declaratory judgment because the declaration the plaintiff sought did

not settle the parties' dispute or prove the existence of a right, power, privilege or immunity between the parties, particularly whether the plaintiff has a right to a defense from Greater New York in the asbestos lawsuits. Even if we assume, for the sake of argument, that Greater New York is correct, we note that Practice Book § 17-54 clearly does not limit the scope of declaratory judgment actions to determining whether there exists a right, power, privilege or immunity between the parties. Subsection (2) of Practice Book § 17-54 expressly authorizes the court to declare "the existence or nonexistence . . . (2) of *any fact upon which the existence or nonexistence of such right, power, privilege or immunity does or may depend,* whether such right, power, privilege or immunity now exists or will arise in the future." (Emphasis added.) And that is precisely what the court did here. It declared the existence of a fact—that Greater New York had issued to Acoustical Materials Corporation an insurance policy providing comprehensive general liability and products liability coverage with specific liability and time limits—on which depends the existence of a right—the plaintiff's right to a defense from Greater New York in the asbestos lawsuits.

Greater New York contends that such an interpretation of Practice Book § 17-54 (2) is impermissible, as it would result in piecemeal litigation by permitting parties to file declaratory judgment actions simply to establish one of myriad issues to be resolved in order for a party finally to achieve its desired result. Indeed, Greater New York states in its brief that the court's declarations concerning the subject insurance policy "settled no legal relation between the parties because [the court] did not determine whether the underlying asbestos claims that are the real matter in interest to [the plaintiff] are covered." We reject that contention for two reasons. First, our Supreme Court has stated

that a court's declarations need not finally settle the legal relations between the parties: *"That our statute and rules undoubtedly were designed to reach beyond declarations of law which would finally determine the rights of the parties as regards each other* definitely appears from the . . . provision in § 249 [now Practice Book § 17-54] which authorizes judgments as to the existence or nonexistence 'of any fact upon which the existence or nonexistence of such right, power, privilege or immunity does or may depend.' " (Emphasis added.) *Connecticut Savings Bank* v. *First National Bank & Trust Co.*, supra, 133 Conn. 407. Second, if we were to adopt Greater New York's contention, we would render Practice Book § 17-54 (2) superfluous. Generally, we reject an interpretation that achieves such a result. See, e.g., *Tyler E. Lyman, Inc.* v. *Lodrini*, 63 Conn. App. 739, 744, 780 A.2d 932 ("We interpret provisions of the Practice Book according to the same well settled principles of construction that we apply to the General Statutes. . . . We presume that there is a purpose behind every sentence, clause, or phrase used in an act and that *no part of a statute is superfluous.*" [Citations omitted; emphasis added; internal quotation marks omitted.]), cert. denied, 258 Conn. 902, 782 A.2d 137 (2001).

Greater New York also argues that the court lacked subject matter jurisdiction to render a declaratory judgment because the plaintiff's claims for declaratory relief concerning the insurance policy are not justiciable.[2] In

---

[2] "Even if the declaration sought falls within the scope of the statute and rules, the rules further provide that the court will not act unless the plaintiff satisfies [the conditions set forth in Practice Book § 17-55]." 2 E. Stephenson, supra, § 226 (e), p. 587. Practice Book § 17-55 provides: "A declaratory judgment action may be maintained if all of the following conditions have been met:

"(1) The party seeking the declaratory judgment has an interest, legal or equitable, by reason of danger of loss or of uncertainty as to the party's rights or other jural relations;

"(2) There is an actual bona fide and substantial question or issue in dispute or substantial uncertainty of legal relations which requires settlement between the parties; and

support of its argument, Greater New York relies on our Supreme Court's decision in *Milford Power Co., LLC* v. *Alstom Power, Inc.*, supra, 263 Conn. 616.

In *Milford Power Co., LLC*, the plaintiff contracted with the defendants for certain engineering, procurement and construction services related to the construction of an electric power generating plant. Id., 618. During construction, a steam generator collapsed, killing two workers and injuring two others, prompting a federal Occupational Safety and Health Administration investigation, which halted construction for more than one month. Id., 618–19. The defendants notified the plaintiff by letter that the accident and subsequent investigation constituted force majeure events, but did not make a claim under the contract for additional time or money to complete the project. Id., 619–20. After rejecting the notice, the plaintiff filed a declaratory judgment action, seeking determinations that the defendants' notice letter had been untimely, and that the accident and subsequent investigation had not constituted a force majeure. Id., 620–21. The defendants filed a motion to dismiss, arguing that the plaintiff's action was premature because they had not yet made a claim for additional time or money to complete the project. Id., 621. The trial court denied the motion to dismiss. Id. After the trial court rendered partial summary judgment against the defendants; id., 622; our Supreme Court, on appeal, reversed the judgment, concluding that there was no justiciable controversy before the court. Id., 629. The court's decision turned on the fact that although the

---

"(3) In the event that there is another form of proceeding that can provide the party seeking the declaratory judgment immediate redress, the court is of the opinion that such party should be allowed to proceed with the claim for declaratory judgment despite the existence of such alternate procedure."

The first two provisions "are the equivalent of saying that an action for a declaratory judgment may be employed only in solving a justiciable controversy." *Liebeskind* v. *Waterbury*, 142 Conn. 155, 158, 112 A.2d 208 (1955).

defendants notified the plaintiff that a force majeure event had occurred, they never claimed that they were entitled to additional time or money to fulfill their obligations as a result of the claimed force majeure event. Id., 627. According to the court, "[w]ithout a claim of entitlement by the defendants, there *is no dispute* and the trial court cannot conclude definitively that its decision will have *any* effect on the adversaries before it. In other words, because the plaintiff's claims were contingent on the outcome of a dispute that had not yet transpired, and indeed might never transpire, the injury was hypothetical and, therefore, the claim was not justiciable." (Emphasis in original.) Id.

Here, in contrast with the situation *Milford Power Co., LLC*, the plaintiff not only notified Greater New York of the asbestos lawsuits and the existence of the insurance policy, but also—and this is the crucial difference—requested that Greater New York provide a defense against those claims pursuant to the coverage under the policy. For its part, Greater New York has denied the policy's existence and refused to tender a defense on the plaintiff's behalf. The plaintiff, therefore, has incurred, and will continue to incur, substantial costs defending itself in the lawsuits. Accordingly, there is no future or contingent event that is required to make the plaintiff's claims justiciable.

## II

Greater New York next claims that the court improperly concluded that the allegations in the plaintiff's complaint stated a valid ground for declaratory relief. According to Greater New York, Connecticut law requires the proponent of a lost document to prove both its existence and its terms and conditions, and because the plaintiff did not seek to prove the terms and conditions of the alleged insurance policy, it could not, even if it could establish the policy's existence,

obtain any practical relief. It is abundantly clear that this claim is nothing more than a regurgitation of Greater New York's previous claim. Having already concluded in part I that it was permissible for the plaintiff to seek a declaratory judgment concerning only the policy's existence—it being a fact on which the existence of a right depends—we reject Greater New York's second claim.

### III

Greater New York finally claims that the court improperly concluded that the plaintiff presented sufficient evidence to prove the existence of the insurance policy. We disagree with that claim.

"Our role in reviewing an appeal based on the sufficiency of the evidence is well defined. . . . An appeal based on the sufficiency of evidence to support a factual finding carries a legal and practical restriction to review. The function of an appellate court is to review, and not to retry, the proceedings of the trial court. . . . Further, we are authorized to reverse or modify the decision of the trial court only if we determine that the factual findings are clearly erroneous in view of the evidence and pleadings in the whole record, or that its decision is otherwise erroneous in law. . . . Where there is conflicting evidence . . . we do not retry the facts or pass on the credibility of the witnesses. . . . The probative force of conflicting evidence is for the trier to determine. . . . In a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony." (Citations omitted; internal quotation marks omitted.) *Steiger* v. *J. S. Builders, Inc.*, 39 Conn. App. 32, 34–35, 663 A.2d 432 (1995).

The plaintiff presented sufficient secondary evidence to support its claim that Greater New York had issued the subject insurance policy to Acoustical Materials

Corporation. That evidence includes the following: (1) A certificate of insurance, signed by Stuart A. Kessler, an authorized representative of Greater New York, listing Acoustical Materials Corporation as the insured, and indicating that Acoustical Materials Corporation had in effect with Greater New York, through January 1, 1966, a products liability and comprehensive general liability policy, number 17-C3-C00627, with $500,000-$1 million bodily injury limits and $250,000 property damage limits; a comprehensive automobile liability policy, number AC 901, with the same bodily injury and property damage limits; and a workers' compensation and employer's liability policy, number 16-06-C00381, with bodily injury limits of $100,000 per person; (2) letters from Greater New York acknowledging receipt of workers' compensation claims submitted by Acoustical Materials Corporation for employees injured during the years 1964, 1965, 1966 and 1967; (3) documents from 1967 and 1968 detailing Acoustical Material Corporation's transition from Greater New York to its subsequent liability insurer, Aetna Life and Casualty Company; (4) deposition testimony of Nozko that in the early 1960s, he obtained insurance coverage for Acoustical Materials Corporation under various Greater New York policies through the May, Potter and Murphy insurance agency; (5) testimony of Frank Craemer, an insurance agent with May, Potter and Murphy, that following a presentation he made to Nozko in 1962, he was successful in getting Nozko to purchase comprehensive general liability, workers' compensation and automobile liability policies from Greater New York, and that Greater New York insured Acoustical Materials Corporation under the comprehensive general liability policy from approximately 1962 to 1968, when Acoustical Materials Corporation switched coverage to Aetna Life and Casualty Company; and (6) testimony of Kessler, who became branch manager of Greater New York's

Hartford office in 1962, that he was approached by Craemer to discuss insurance coverage for Acoustical Materials Corporation and that he eventually, with the approval of Greater New York's home office, issued comprehensive general liability and workers' compensation policies to Acoustical Materials Corporation.

Greater New York argues that this evidence is insufficient because the certificate of insurance "is suspect in many regards," the materials from Aetna Life and Casualty Company detailing Acoustical Materials Corporation's transition from Greater New York to Aetna Life and Casualty Company contain "rank hearsay," the only workers' compensation claim offered by the plaintiff as evidence of the existence of any insurance policies for the year 1964 has an ambiguous date of injury, and there is evidence that, during the years 1966 and 1967, Acoustical Materials Corporation presented workers' compensation claims by the plaintiff's employees to other insurance carriers. In so arguing, Greater New York fails to recognize that our role "is not to duplicate the trial court's weighing process, but rather to determine whether its conclusion was reasonable. In the absence of clear error, this court should not overrule the thoughtful decision of the trial court, which has had an opportunity to assess the legal issues which may be raised and to weigh the credibility of . . . the witnesses." (Internal quotation marks omitted.) *Doe* v. *Rapoport*, 80 Conn. App. 111, 116, 833 A.2d 926 (2003). That said, in light of the documentary and testimonial evidence previously set forth, we conclude that there was sufficient evidence to support the court's findings concerning the subject insurance policy.

The judgment is affirmed.

In this opinion the other judges concurred.