# CHESTER LISIEWSKI *v.* JOHN A. SEIDEL ET AL.
## (AC 24901)

Schaller, DiPentima and McLachlan, Js.

Argued February 21—officially released May 30, 2006

*Ernest J. Cotnoir*, for the appellants (defendants).

*Beth A. Steele*, for the appellee (plaintiff).

*Opinion*

SCHALLER, J. This case comes before us for a second time. The defendants, John A. Seidel and Fred R. Seidel, appeal from the judgment of the trial court rendered in favor of the plaintiff, Chester Lisiewski. On appeal, the defendants claim that the court improperly found that the plaintiff proved his claim of adverse possession. We reverse in part and affirm in part the judgment of the trial court.

In *Lisiewski* v. *Seidel*, 72 Conn. App. 861, 806 A.2d 1121, cert. denied, 262 Conn. 921, 922, 812 A.2d 865 (2002), we set forth the following relevant facts and procedural history. "The plaintiff . . . owns land to the east of the disputed property and brought this action when the defendants erected a metal gate obstructing his passage over [a] driveway. . . .

"The parcel of land subject to the title dispute is a narrow, L-shaped parcel on the northerly and westerly borders of the plaintiff's land (disputed area). . . .

Even if one accepts the construction of deeds advanced by the plaintiff, almost all of the gravel driveway is located on the undisputed land of the defendants except for a narrow gore within the disputed area which expands from a sliver to a width of five feet on the street line. . . .

"In the early 1950s, the plaintiff and the defendants' grandfather, Reinhold Seidel, worked together as foremen in the same factory. At that time, the plaintiff and Seidel negotiated the land conveyance at issue in this appeal. Seidel owned real property in the town of Sprague, which he decided to sell to the plaintiff. In 1952, prior to conveyance, the plaintiff began building a house on the land. During construction, vehicles eventually wore a path near the western boundary of the parcel that Reinhold Seidel would eventually convey to the plaintiff. It was this path that would later evolve into the gravel driveway . . . . On April 28, 1954, Seidel conveyed the land to the plaintiff's wife by warranty deed, which was recorded in the Sprague land records in volume 16, pages 410 and 411.

"When the plaintiff moved in, the land immediately to the east of the gravel driveway was 'practically' a 'jungle,' due to heavy foliage. The plaintiff soon cleared and cultivated the area. In late 1954, he planted a row of [h]emlocks in that area, roughly parallel to the gravel driveway. In the late 1950s, he built a stone wall in the disputed area. One length of that stone wall lay several feet to the east of the gravel driveway.

"Meanwhile, Seidel retained land to the west, including the gravel driveway. This land eventually passed to the defendants. Upon Seidel's death, the land first passed from his estate to Martha Emma Seidel, his wife. In 1962, Martha Emma Seidel conveyed that land by quitclaim deed dated February 16, 1962, and recorded in the Sprague land records in volume 15, page 413, to

her son, Fred Seidel, and his wife Olga. Finally, Fred Seidel and Olga Seidel conveyed the land to their two sons, [the defendants] by warranty deed dated and recorded on June 20, 1997, on pages 689 and 690 of volume 53 of the Sprague land records.

"Before the defendants acquired the property to the west of what their grandfather had conveyed to the plaintiff, the plaintiff had used the gravel driveway for more than forty years as a means of egress and ingress to and from his property. In 1981, the plaintiff built a garage behind and to the north of his house, connecting with the gravel driveway. Prior to that date, he had simply parked vehicles outside in the same location. The defendants' predecessors in title, namely their father and grandfather, never challenged the plaintiff's use of the gravel driveway." Id., 862–64.

Shortly after obtaining the property from their parents, the defendants erected a metal gate at the end of the gravel driveway, preventing the plaintiff's passage. Id., 864. By way of an amended revised complaint dated June 12, 2000, the plaintiff claimed, inter alia, that he had obtained title to the disputed area by adverse possession and by the language contained in the deeds.[1] The trial court concluded that the plaintiff had "established through the testimony of his experts and the deed that he has . . . title to the disputed [area]." The court did not address the plaintiff's adverse possession claim as a result of its conclusion regarding the construction of the deed and rendered judgment accordingly.

On appeal, we reversed "the judgment of the court with respect to its holding that the 'plaintiff has established through the testimony of his expert and through

---

[1] The plaintiff also claimed that he was entitled to a prescriptive easement over the gravel driveway. The trial court found in favor of the plaintiff with respect to the prescriptive easement issue, and we affirmed that portion of the court's judgment. See *Lisiewski* v. *Seidel,* supra, 72 Conn. App. 872–75.

his deed that he has . . . title to the disputed [area] . . . and that the defendants have no title, interest or estate therein.' " Id., 871. We then stated: "The court did not decide the plaintiff's claim that he had established title by adverse possession to the disputed area because it found that he had title by deed, a decision we this day reverse. We therefore remand the case for the court's consideration of whether the plaintiff has established title by adverse possession to any area within the disputed area." Id.

Following our remand, the defendants, on October 31, 2002, moved to supplement the evidentiary record, and the court denied their motion on December 12, 2002. The court issued its second memorandum of decision on November 14, 2003, in which it determined that the plaintiff had obtained the disputed area by adverse possession. This appeal followed. Additional facts will be set forth as necessary.[2]

The defendants claim that the court improperly found that the plaintiff proved that he was entitled to the disputed area. Specifically, they argue that the court's prior statement that the parties shared dominion over the disputed area precluded a finding of adverse possession. The defendants also argue that the plaintiff failed to establish that he had adversely possessed the entire disputed area. We address each argument in turn.

---

[2] We note that, through no fault of counsel, the trial exhibits have been lost. The parties attempted to reconstruct the record for our review and, following oral argument, submitted a surveyor's map, along with copies of the relevant deeds. The parties were unable, however, to re-create the photographs of the properties and the disputed area. Although the photographs undoubtedly would have been helpful and facilitated our review, we conclude that their availability did not make a material difference in the outcome of this appeal due to the other exhibits and the transcripts. See *Neiditz* v. *Morton S. Fine & Associates, Inc.*, 2 Conn. App. 322, 325 n.5, 479 A.2d 249 (1984), rev'd in part on other grounds, 199 Conn. 683, 508 A.2d 438 (1986); see also *Stern & Co.* v. *International Harvester Co.*, 146 Conn. 42, 46–47, 147 A.2d 490 (1958).

As a preliminary matter, we identify the legal principles applicable to this case. "[T]o establish title by adverse possession, the claimant must oust an owner of possession and keep such owner out without interruption for fifteen years by an open, visible and exclusive possession under a claim of right with the intent to use the property as his own and without the consent of the owner. . . .

"A finding of adverse possession is to be made out by clear and positive proof. . . . [C]lear and convincing proof . . . denotes a degree of belief that lies between the belief that is required to find the truth or existence of the [fact in issue] in an ordinary civil action and the belief that is required to find guilt in a criminal prosecution. . . . [The burden] is sustained if evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist. . . . The burden of proof is on the party claiming adverse possession. . . .

"Despite that exacting standard, our scope of review is limited. Adverse possession is a question of fact, and when found by the trial court will not be reviewed by this court as a conclusion from evidential facts, unless it appears that these facts, or some of them, are legally or logically necessarily inconsistent with that conclusion." (Citation omitted; internal quotation marks omitted.) *Provenzano* v. *Provenzano*, 88 Conn. App. 217, 221–22, 870 A.2d 1085 (2005); see also General Statutes § 52-575; *Roche* v. *Fairfield*, 186 Conn. 490, 498, 442 A.2d 911 (1982); *Wadsworth Realty Co.* v. *Sundberg*, 165 Conn. 457, 462–63, 338 A.2d 470 (1973); 16 R. Powell, Real Property (2005) § 91.13. With these principles in mind, we address the defendants' specific arguments.

## I

The defendants first contend that the court's statement in its first memorandum of decision that the parties shared dominion over the disputed property precluded a finding of adverse possession in favor of the plaintiff. We agree that the defendants have stated correctly that shared dominion defeats a claim of adverse possession. See *Roche* v. *Fairfield*, supra, 186 Conn. 498; *Whitney* v. *Turmel*, 180 Conn. 147, 148, 429 A.2d 826 (1980); *Matto* v. *Dan Beard, Inc.*, 15 Conn. App. 458, 476, 546 A.2d 854, cert. denied, 209 Conn. 812, 550 A.2d 1082 (1988). If dominion is shared, then the exclusivity element of adverse possession is absent. We conclude, however, that the defendants' argument mischaracterizes the court's statement in its first decision.

The defendants filed a counterclaim and sought to obtain title to the disputed area by adverse possession. In its first memorandum of decision, the court indicated that the testimony regarding the use of the disputed area, more specifically, the land located to the west of the stone wall and hemlock bushes and east of the gravel road, was "in great dispute . . . ." The court determined that the testimony of the plaintiff's witnesses was more credible than that of those offered by the defendants. The court stated: "The evidence was clear that although the defendants claimed adverse possession, *they did not show that they had exclusive use of the land, but merely shared dominion over the property with the plaintiff.* The defendants did not dispute that [the plaintiff and his family] regularly walked on the disputed area to maintain their bushes and, as part of the disputed area falls on the east side of the wall, [the defendants] admitted they never maintained this area or considered it to be their own. Because [the defendants] failed to keep the [plaintiff and his family] out of the disputed area uninterruptedly

for fifteen years, they have not proven that they have adversely possessed the area by clear and convincing evidence." (Emphasis added.)

Following our remand, the sole issue before the court was whether the plaintiff had obtained title to the disputed area by adverse possession. In response to the defendants' argument that the court had found "shared dominion" over the disputed area, the court reiterated that it found that the testimony set forth by the plaintiff and his witnesses was more credible than the testimony offered by the defendants. The court then stated: "The defendants incorrectly suggest that this court's previous decision found that the evidence clearly showed that the parties shared dominion over the property. What this court actually determined was that the defendants did not present this court with clear and convincing proof that they had exclusive use of the land. *At best,* the defendants' testimony and witnesses might support a finding of shared dominion; however, the court finds that they failed to do even that." (Emphasis in original.)

We agree with the plaintiff that the defendants have mischaracterized the court's statement in the first decision. It is clear, when read in the proper context, that the court did not make a finding as to whether the parties shared dominion over the disputed property. We read the court's statement to indicate that, with respect to the counterclaim, the defendants had the burden of establishing adverse possession by clear and convincing evidence, and that even if the court credited the defendants' evidence, the defendants were unable to establish the exclusivity element of adverse possession because that evidence indicated shared dominion.

Furthermore, if it had made such a finding, the court could have rendered judgment denying *both parties' claims for adverse possession* at the time of the first decision. In other words, if there had been an actual

finding by the court of shared dominion, judgment could have been rendered not only on the defendants' counter-claim, but also on the plaintiff's claim for adverse possession, which he had pleaded in the alternative.[3] Instead, the court noted that it was not necessary to reach the plaintiff's adverse possession claim in the first decision. We conclude, therefore, that the defendants' claim is without merit.

## II

The defendants next argue that the plaintiff failed to prove that he has adversely possessed the entire disputed area. Simply put, the defendants challenge the sufficiency of the evidence supporting the conclusion that the plaintiff has adversely possessed the disputed area. The defendants present two arguments. First, they argue that, although there was evidence before the court that the plaintiff used the "southern portion" of the disputed area, this evidence was insufficient to sup-port the court's conclusion with respect to the plaintiff's adverse possession claim. Second, the defendants con-tend that there is no evidence to support the finding that the plaintiff possessed the "northern portion" of the disputed area.

To facilitate our discussion, it will be helpful to describe in greater detail the disputed area and the plaintiff's property. The southern boundary of the plain-tiff's property is Bushnell Hollow Road. The disputed area lies between the properties and runs north and south, with the defendants' property to the west and the plaintiff's to the east. The disputed area is approxi-mately 420 feet in length. Running in a similar direction with the disputed area on the defendants' eastern bor-der is the gravel driveway. This driveway connects to

---

[3] Because the court found in favor of the plaintiff's claim regarding title, it was not required to reach his claim of adverse possession. See *Bond* v. *Benning*, 175 Conn. 308, 313–14, 398 A.2d 1158 (1978).

Bushnell Hollow Road. Approximately 220 feet from Bushnell Hollow Road, the gravel driveway turns eastward, enters the disputed area and continues into the plaintiff's property, leading to a garage and carport. The plaintiff built a stone wall and planted the hemlock bushes in the disputed area parallel to the gravel driveway. Located between the line created by the stone wall and hemlock bushes and the driveway is a grassy section of land that is entirely in the disputed area. The hemlock bushes turn eastward into the plaintiff's property just south of the turn in the gravel driveway. To the north of the turn in the driveway is a tree line, located approximately 260 feet from Bushnell Hollow Road. This tree line creates the point of demarcation, splitting the disputed area into a northern and southern portion, as identified by the defendants. With this background in mind, we now address the defendants' specific claims.

## A

The defendants first argue that the evidence of the plaintiff's occupation of the southern portion of the disputed area is insufficient to sustain the court's finding of adverse possession. We disagree.

The following legal principles are germane to our discussion. Our standard of review is well settled. "Our role in reviewing an appeal based on the sufficiency of the evidence is well defined. . . . An appeal based on the sufficiency of evidence to support a factual finding carries a legal and practical restriction to review. The function of an appellate court is to review, and not to retry, the proceedings of the trial court. . . . Further, we are authorized to reverse or modify the decision of the trial court only if we determine that the factual findings are clearly erroneous in view of the evidence and pleadings in the whole record, or that its decision is otherwise erroneous in law. . . . Where there is con-

flicting evidence . . . we do not retry the facts or pass on the credibility of the witnesses. . . . The probative force of conflicting evidence is for the trier to determine. . . . In a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony." (Internal quotation marks omitted.) *ACMAT Corp.* v. *Greater New York Mutual Ins. Co.*, 88 Conn. App. 471, 481, 869 A.2d 1254, cert. denied, 274 Conn. 903, 876 A.2d 11 (2005).

The defendants argue that the extent of the use of the southern portion of the disputed area by the plaintiff, that is, "trimming trees and mowing grass," is legally and logically inconsistent with the court's finding that the plaintiff's possession was continuous and exclusive. In support of this argument, the defendants cite *Bridgeport Hydraulic Co.* v. *Sciortino*, 138 Conn. 690, 88 A.2d 379 (1952). In that case, our Supreme Court upheld the judgment of the trial court denying the claim of adverse possession. Id., 695. The trial court had found that the party alleging adverse possession had cut wood on the property at "infrequent and irregular intervals" over a thirty year period and at one time had dug a ditch to drain a pond. Id., 694. The Supreme Court concluded: "In view of the seclusion of the tract, the irregularity and infrequency of the hostile acts, and the interruption by the owner of the activities of [the adverse possessor], the court could reasonably conclude that title by adverse possession had not been proved by the defendant." Id., 695.

The facts of *Bridgeport Hydraulic Co.* are distinguishable from those in the present case. The disputed area in the present case consists of land along the border between the parties' properties. The plaintiff testified that he had built a stone wall in the disputed area in the 1950s. He has maintained that wall since it was built. The plaintiff also planted hemlock bushes in the

disputed area and has cultivated them since 1954. The plaintiff further testified that he had cleared out the overgrown brush and continually cut the grass in the area between the stone wall and the gravel road since 1954.

The plaintiff's son, Constantine Lisiewski, testified that he had assisted the plaintiff in maintaining these areas. The plaintiff's former daughter-in-law, Patricia Goyette, also testified that she had helped the plaintiff trim the hemlock bushes and remove brush from the area between the stone wall and the driveway. In short, the testimony at trial offered by the plaintiff, which the court expressly credited, established substantial and repeated activity by the plaintiff in the disputed area. See, e.g., 2 C.J.S., Adverse Possession §§ 41–49 (2003). This activity was much greater than the infrequent and irregular activity found by the trial court in *Bridgeport Hydraulic Co.* v. *Sciortino,* supra, 138 Conn. 690. We conclude, therefore, that the evidence in the present case is legally and logically consistent with the finding of adverse possession. We cannot say that the court's finding was clearly erroneous with respect to the southern portion of the disputed area.

B

The defendants next argue that there is insufficient evidence to support the finding that the plaintiff possessed the northern portion of the disputed area. Specifically, the defendants argue that there was no evidence that would support a finding of adverse possession with respect to the northern portion of the disputed area. We agree with the defendants.

We first note that the plaintiff is entitled only to the portion of the disputed area that he actually occupied during the course of his adverse possession. This is due to the fact that the plaintiff's claim of adverse possession is not based on color of title. Color of title exists

when the claim of adverse possession is premised on a written instrument that appears to convey title and describes the property, but fails to actually convey legal title. 16 R. Powell, supra, § 91.08 [1], p. 91-49. "Possession under color of title confers at least two benefits on the claimant. *First, actual possession of only a part of the area described in the colorable title is treated as constructive possession of the whole area covered by the instrument.* Second, in many jurisdictions the required period of possession is shortened." (Emphasis added.) Id.[4] In contrast, adverse possession without color of title is limited to the area of land actually possessed. Id.

The Vermont Supreme Court has stated: "Adverse possession may be asserted either under claim of title (where claimant took possession under a deed which is for some reason defective), or under a claim of right which arises from the open, notorious and hostile possession of the land at issue. Where there is color of title, it is relatively simple to ascertain the extent of the possession claimed, since actual and exclusive occupation of any part of the deeded premises carrie[s] with it constructive possession of the whole . . . . *In the absence of color of title, however, and where a lot has no definite boundary marks, adverse possession can only extend as far as claimant has actually occupied and possessed the land in dispute.*" (Citation omitted; emphasis added; internal quotation marks omitted.) *Community Feed Store* v. *Northeastern Culvert Corp.,* 151 Vt. 152, 156, 559 A.2d 1068 (1989); see *N.A.S. Holdings, Inc.* v. *Pafundi,* 169 Vt. 437, 441, 736 A.2d 780 (1999), cert. denied, 528 U.S. 1079, 120 S. Ct. 798, 145 L. Ed. 2d 672 (2000); see also *Fee* v. *Leatherwood,* 232 Ark. 817, 821, 340 S.W.2d 397 (1960) (appellees' adverse possession limited to land actually occupied); *Friend-*

[4] To constitute color of title, an instrument should sufficiently describe the property and claim to convey title. 2 C.J.S., supra, §§ 91–92, p. 524.

*ship Baptist Church, Inc.* v. *West,* 265 Ga. 745, 745, 462 S.E.2d 618 (1995) (where no color of title, prescription will not extend beyond actual "possessio pedis"); *Yakima Valley Canal Co.* v. *Walker,* 76 Wash. 2d 90, 93, 455 P.2d 372 (1969); *Droege* v. *Daymaker Cranberries, Inc.,* 88 Wis. 2d 140, 146, 276 N.W.2d 356 (Wis. App. 1979) (burden of providing extent of occupancy rests with adverse possessor); 3 Am. Jur. 2d 108, Adverse Possession § 27 (2002).

In *Roberts* v. *Merwin,* 80 Conn. 347, 68 A. 377 (1907), our Supreme Court affirmed the judgment rendered in favor of the defendants. The court concluded that the plaintiff had failed to prove his claim of ownership with respect to certain tracts of land identified as plots two, three and four. Id., 349. Specifically, the court concluded that the plaintiff's claim to title was insufficient because he had received title from an adverse possessor who had gained title to plot one, but had never actually occupied plots two, three and four. Id., 349–50. Thus, the boundary of the property obtained by adverse possession was limited to plot one, the area that actually had been possessed.

It is our view that Connecticut jurisprudence is in accord with the general principle of law expressed by the Vermont Supreme Court and adopted by many of our sibling states. Accordingly, the plaintiff in the present case, who did not proceed under color of title, is entitled to only the area that he actually occupied during the course of his adverse possession. We already have determined that there was sufficient evidence to support the court's finding of adverse possession with respect to the southern portion of the disputed area. We now turn our attention to the evidence adduced at trial pertaining to the northern portion.

The plaintiff's testimony focused exclusively on the southern portion of the disputed area. He testified about the hemlock bushes and the stone wall that he had

constructed. He also indicated that he had cleared out and consistently maintained the grassy area that was located between the aforementioned hemlock bushes and stone wall and the gravel road. He further stated that he had used the gravel road as a means for equipment and motor vehicles to gain access to the back of his property.

Constantine Lisiewski testified that he had maintained the grassy area between the stone wall and the gravel road. He further testified that he had maintained the hemlock bushes. He then responded affirmatively to the following question: "So, for the last thirty-nine years, would it be fair to say, since you were born, since you have lived there, you believed this area, on the left side of the stone wall and the left side of the bushes to be [the plaintiff's] land?"

During cross-examination, the defendants' counsel showed Constantine Lisiewski exhibit three, which was described as a photograph taken from the front of the plaintiff's property looking toward the back. Constantine Lisiewski testified that this photograph depicted an area of land that belongs to his father. He subsequently described another photograph that was taken in the same direction as exhibit three that showed the grassy area near the driveway. He stated that he had "mowed" and "weed whacked" this area. This driveway off of the gravel road, however, is located entirely within the southern portion of the disputed area and is just north of the hemlock bushes. Constantine Lisiewski was then shown another picture, designated exhibit seven that depicted the "back of the lot" to the north of the driveway, but there was no testimony regarding his activities in that area.

During redirect examination, Constantine Lisiewski was shown photographs designated exhibits eight through fourteen. He indicated that prior to the lawsuit, he had mowed "all the way back." It is not clear, how-

ever, whether he meant "all the way back" to the northern boundary of the plaintiff's property or the area where the gate had been placed or some point along the western boundary. Even if we assume arguendo that Constantine Lisiewski's testimony indicated that he had mowed the grass in the disputed area to the northern boundary, the court's finding of adverse possession with respect to the northern portion nevertheless was clearly erroneous.

It has long been the law in Connecticut that "[t]he doctrine of adverse possession is to be taken strictly. *Huntington* v. *Whaley*, 29 Conn. 391, 398 (1860)." (Internal quotation marks omitted.) *Roche* v. *Fairfield*, supra, 186 Conn. 499; see also *Schulz* v. *Syvertsen*, 219 Conn. 81, 91, 591 A.2d 804 (1991); *Robinson* v. *Myers*, 156 Conn. 510, 517, 244 A.2d 385 (1968); *Hurlburt* v. *Bussemey*, 101 Conn. 406, 412, 126 A. 273 (1924); *Matto* v. *Dan Beard, Inc.*, supra, 15 Conn. App. 475; *Woycik* v. *Woycik*, 13 Conn. App. 518, 522, 537 A.2d 541 (1988); *Lazoff* v. *Padgett*, 2 Conn. App. 246, 248, 477 A.2d 155, cert. denied, 194 Conn. 806, 482 A.2d 711 (1984); *Clark* v. *Drska*, 1 Conn. App. 481, 486, 473 A.2d 325 (1984).

In the present case, there was no direct evidence of adverse possession with respect to the northern portion of the disputed area. The testimony from Constantine Lisiewski that he mowed grass "all the way back" is the only evidence of use by the plaintiff of the northern portion. Such evidence does not establish the length of time that Constantine Lisiewski mowed this grass or the frequency that he used the northern portion. This evidence pales in comparison to the details regarding the southern portion, concerning which there was testimony from several witnesses regarding the frequency and length of time that the southern portion of the disputed area was adversely possessed by the plaintiff and members of his family. At best, the testimony of Constantine Lisiewski provides an inference of use of

the northern portion. "*A finding of adverse possession is not to be made out by inference, but by clear and positive proof. . . .* [C]lear and convincing proof . . . denotes a degree of belief that lies between the belief that is required to find the truth or existence of the [fact in issue] in an ordinary civil action and the belief that is required to find guilt in a criminal prosecution. . . . [The burden] is sustained if evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist." (Emphasis added; internal quotation marks omitted.) *Top of the Town, LLC* v. *Somers Sportsmen's Assn., Inc.*, 69 Conn. App. 839, 844, 797 A.2d 18, cert. denied, 261 Conn. 916, 806 A.2d 1058 (2002); see also *Wildwood Associates, Ltd.* v. *Esposito*, 211 Conn. 36, 42, 557 A.2d 1241 (1989); *Hurlburt* v. *Bussemey*, supra, 101 Conn. 412; *Rudder* v. *Mamanasco Lake Park Assn., Inc.*, 93 Conn. App. 759, 780, 890 A.2d 645 (2006); *LaPre* v. *Nibo Films, Ltd.*, 10 Conn. App. 669, 672 n.3, 525 A.2d 140 (1987). We conclude, therefore, that the court's finding of adverse possession with respect to the northern portion of the disputed area was clearly erroneous.

The judgment is affirmed with respect to the southern portion of the disputed area. The judgment is reversed with respect to the northern portion of the disputed area and the case is remanded for further proceedings to determine the location of the northern boundary of the land that the plaintiff acquired by adverse possession. We further direct the court to consider only the portion of the disputed area north of where the hemlock bushes begin to turn eastward and south of the tree line that lies immediately north of the gravel driveway.[5]

In this opinion the other judges concurred.

---

[5] See the crosshatched area on the appendix to this opinion.