DURKIN VILLAGE PLAINVILLE, LLC *v.* WILLIAM E.
CUNNINGHAM ET AL.
(AC 26542)

Schaller, Rogers and Peters, Js.

Argued April 20—officially released September 26, 2006

*William T. Barrante*, for the appellants-appellees (defendants).

*Jeffrey M. Knickerbocker*, with whom, on the brief, was *Robert A. Ziegler*, for the appellee-appellant (plaintiff).

ROGERS, J. The defendants, William E. Cunningham and Beverly Cunningham, appeal, and the plaintiff, Durkin Village Plainville, LLC, cross appeals from the judgment rendered by the trial court after deciding cross motions for summary judgment in favor of the plaintiff. The court's judgment resolved a boundary dispute and awarded damages and injunctive relief to the plaintiff for the defendants' trespass. The defendants claim on appeal that the court (1) improperly granted the plaintiff's motion for summary judgment because the motion and judgment were inconsistent with the plaintiff's complaint, (2) improperly denied the defendants' motion for summary judgment because the undisputed facts demonstrated that they had acquired the disputed area via adverse possession, (3) abused its discretion in denying the defendants' motion to reargue the summary judgment motions, (4) improperly granted the plaintiff's motion for costs and (5) improperly disallowed certain testimony when allowing reargument on the motion for costs.[1] In its cross appeal, the plaintiff claims that the court improperly declined to hold a hearing in damages

---

[1] We have combined certain of the defendants' numerous claims due to redundancy and have restated or reordered others for clarity. As to their claim that the court improperly failed to find that the plaintiff, contrary to General Statutes § 52-575, did not claim ownership of the entire area at issue within fifteen years of the defendants' possessing it, we decline to address the issue because it was explicitly waived at the outset of the hearing on the parties' summary judgment motions. Specifically, the defendants' counsel conceded that their argument in this regard was meritless and stipulated that they needed to tack the usage of their predecessors in title in order to show the requisite fifteen years of adverse possession. We further do not address the defendants' claim that the judgment should be set aside because the action brought by the plaintiff amounts to a strategic lawsuit against public participation, as that claim is made for the first time on appeal. See *Van Nest* v. *Kegg*, 70 Conn. App. 191, 195, 800 A.2d 509 (2002) ("[t]his court is not bound to consider claimed errors unless it appears on the record that the question was distinctly raised . . . and was ruled upon and decided by the [trial] court adversely to the appellant's claim" [internal quotation marks omitted]); see also Practice Book § 60-5.

on its trespass claim. We reverse the judgment of the trial court on the cross appeal and remand the matter for a hearing in damages. We affirm the judgment as to the appeal.

The following undisputed facts and procedural history are relevant to the appeals. The parties own adjacent properties in Plainville; the plaintiff's property is situated to the south of the defendants' property. The plaintiff acquired its property in 2002[2] and intends to develop it by constructing seven stand-alone condominium units. The defendants purchased their property on October 31, 1989, and have resided there since that date. Shortly after purchasing their property, the defendants constructed a fence along what they believed to be the southern boundary of their property but which was actually about ten feet over that boundary. The fence was located parallel to and just beyond the south wall of a movable garden shed that was present when the defendants purchased their property. The shed was contemplated as part of the real estate transaction, and the defendants, at that time, believed that it was located on their property.

On July 26, 2003, the defendants received a letter from an attorney for the plaintiff, advising them that their fence was encroaching on the plaintiff's property and demanding that it be removed.[3] Because the defendants did not comply, the plaintiff brought the present action. Its three count complaint dated October 20, 2003, alleged trespass, sought to quiet title to its property and requested injunctive relief "prohibiting and

---

[2] More precisely, the plaintiff's principal member, Debbieann Durkin, purchased the land on June 20, 2002, and conveyed it to the plaintiff on July 8, 2003.

[3] In 2002, Debbieann Durkin, commissioned a survey that confirmed that the defendants' fence, as well as the shed, was encroaching on the plaintiff's property. The survey was consistent with the parties' deeds and with maps on file with the town clerk.

restraining the defendants from maintaining a structure upon the land of the [p]laintiff."

On December 9, 2003, the defendants filed an answer and a two count counterclaim. In the first count, they claimed that they owned the land north of their fence by adverse possession, by virtue of their own actions and those of their predecessors in title, and sought to quiet title. In the second count, the defendants alleged that "the plaintiff, by its agents, servants or employees . . . entered upon [the] land [on which their fence is located] and has deprived the defendants of the use and enjoyment of that fence and land."

The parties commenced discovery. In response to an interrogatory in which the plaintiff asked the defendants to identify the acts of trespass that they alleged the plaintiff had committed and to specify the resultant damages, the defendants replied, inter alia: "No actual trespass yet, only threatened trespass." During his April 30, 2004 deposition, William Cunningham was asked whether the plaintiff or any of its agents had gone on his property or whether they had denied him the use of his land. To each question, he answered in the negative. During her July 15, 2004 deposition, Beverly Cunningham, in discussing surveyors she had seen on her property, acknowledged that she had no evidence or documentation indicating that the surveyors were agents of the plaintiff.

The defendants filed an amended counterclaim dated July 19, 2004, in which they replaced the trespass count with a request for injunctive relief, specifically, an order preventing the plaintiff from entering the disputed land and removing or damaging the defendants' fence. On July 30, 2004, the plaintiff filed a motion for costs and fees pursuant to Practice Book § 10-5.[4] According to

---

[4] Practice Book § 10-5 provides in relevant part that "[a]ny allegation or denial made without reasonable cause and found untrue shall subject the party pleading the same to the payment of such reasonable expenses, to be taxed by the judicial authority, as may have been necessarily incurred

the plaintiff, the foregoing discovery responses and the withdrawal of the trespass claim demonstrated that the defendants' trespass allegations had been made without reasonable cause and were untrue. The plaintiff requested that the court order the defendants to pay it $500, the maximum allowable under Practice Book § 10-5. See footnote 4.

The defendants, on February 20, 2004, filed a motion for summary judgment as to their counterclaim. On August 6, 2004, the plaintiff filed a motion for summary judgment. In its motion, the plaintiff requested summary judgment as to both its complaint and the defendants' counterclaim. The parties submitted memoranda of law along with evidence, and a hearing was held on their motions on December 20, 2004. At that hearing, the court granted the plaintiff's motion for costs. On January 10, 2005, the defendants filed a motion to reargue the motion for costs, accompanied by their joint affidavit. On March 21, 2005, the court allowed reargument on the motion for costs. The defendants' counsel requested that William Cunningham be permitted to testify, and the court denied that request. The court then ruled that its original decision on the motion for costs would stand.

On March 24, 2005, the court issued a memorandum of decision in which it granted the plaintiff's motion for summary judgment as to both its complaint and the counterclaim and denied the defendants' motion for summary judgment. It noted initially that "[t]here is no question that the disputed [property] is not within the [defendants'] deed," then proceeded to conclude that the undisputed facts did not establish any of the elements of an adverse possession claim.[5] Because the

by the other party by reason of such untrue pleading; provided that no expenses for counsel fees shall be taxed exceeding $500 for any one offense. . . ."

[5] We note that although adverse possession claims typically present questions of fact, "where the facts with regard thereto are admitted, or the

parties had stipulated that the defendants adversely possessed the disputed area for the fourteen years they had owned their property, the court's conclusion pertained to the usage of the area by the defendants' predecessors in title, Raymond Michaud and Carmela Michaud. See General Statutes § 52-575 (establishing fifteen year period to demonstrate adverse possession). In regard to the plaintiff's trespass claim, the court concluded that for at least a portion of the time that the defendants' fence had existed, it constituted a trespass on the plaintiff's land. After noting that "[t]he parties declined an evidentiary hearing on the issue of damages and asked that the case be decided on the record," it awarded the plaintiff $250 for the defendants' trespass and ordered that the fence be removed.

On April 13, 2005, the defendants filed a motion to reargue the summary judgment motions, to which they attached additional evidence not submitted with their original motion and objection. The court denied the motion to reargue on April 20, 2005. These appeals followed. Additional facts and procedural history will be provided where necessary.

I

The defendants' first claim on appeal is that the court improperly rendered summary judgment in favor of the plaintiff on its complaint. According to the defendants, the plaintiff's summary judgment motion is inconsistent with its complaint, and, hence, the court's judgment does not relate to the complaint. They argue further that given this inconsistency, it is unclear what land the plaintiff was awarded. We disagree with both of these assertions.

evidence thereof is undisputed and susceptible of but one reasonable inference or conclusion," whether adverse possession has been proven is a question of law for the court. 2 C.J.S. 720, Adverse Possession § 292 (2003).

The following additional procedural history is relevant. In the first count of its complaint, alleging trespass, the plaintiff averred that it is "the owner and in possession of a certain piece of land situated in the town of Plainville and bounded as described in Schedule A attached as Exhibit 1 (the 'Property')." Schedule A was, however, a copy of the deed to *the defendants'* property rather than the deed to the plaintiff's property. The defendants argue, in essence, that the judgment is improper because it relates to "a complaint that does not exist or was never filed with the court," i.e., a complaint in which the plaintiff alleged ownership of its own deeded property, and not that of the defendants. We are not persuaded.

"The rule for granting motions for summary judgment is set forth in Practice Book § 17-49. Summary judgment is to be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." *Barlow* v. *Palmer*, 96 Conn. App. 88, 90, 898 A.2d 835 (2006). Our review of the court's ruling on a summary judgment motion is plenary. Id., 91.

"It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of his complaint." (Internal quotation marks omitted.) *McCann Real Equities Series XXII, LLC* v. *David McDermott Chevrolet, Inc.*, 93 Conn. App. 486, 490, 890 A.2d 140, cert. denied, 277 Conn. 928, 895 A.2d 798 (2006). "The purpose of the complaint is to limit the issues to be decided at the trial of a case and is calculated to prevent surprise." (Internal quotation marks omitted.) Id., 491.

"[T]he interpretation of pleadings is always a question of law for the court . . . . Our review of the trial court's interpretation of the pleadings therefore is plenary. . . . [T]he modern trend, which is followed in

Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . [T]he complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties. . . . As long as the pleadings provide sufficient notice of the facts claimed and the issues to be tried and do not surprise or prejudice the opposing party, we will not conclude that the complaint is insufficient to allow recovery." (Citations omitted; internal quotation marks omitted.) *Boone* v. *William W. Backus Hospital*, 272 Conn. 551, 559–60, 864 A.2d 1 (2005).

After our review of the pleadings and the evidence submitted to the court, we conclude that the plaintiff's complaint is sufficient to support the court's judgment. Although the plaintiff misidentified its property in the first count of its complaint, it correctly specified the volume, page number and date of its deed in the second count seeking to quiet title. Furthermore, that correct deed was among the evidence before the court in conjunction with the summary judgment motions, as was a detailed survey map depicting both the plaintiff's and the defendants' properties, the boundary between them and the defendants' fence.

Importantly, the defendants do not claim that they were "prejudiced in maintaining [their] defense, surprised by the plaintiff's proof or misled by the allegations in the complaint." *Francis* v. *Hollauer*, 1 Conn. App. 693, 695, 475 A.2d 326 (1984). To the contrary, the record evidences no confusion whatsoever as to the issues being tried. In their answer, the defendants admitted that the plaintiff had accurately identified the date, volume number and page of its deed and, further, that they had "claims to a certain portion of [the] plaintiff's real estate that are adverse to the plaintiff's title."[6]

---

[6] In their memorandum of law in support of their summary judgment motion, the defendants identified, as undisputed facts, the following: "(1)

Moreover, at oral argument before this court, the defendants' counsel conceded that in the trial court proceedings, there was no question as to which piece of property the plaintiff sought to quiet title. We note additionally that this is not a case in which the plaintiff alleged one cause of action then recovered on an entirely different one. See, e.g., *Francis* v. *Hollauer*, supra, 695 (reversing judgment establishing prescriptive easement when complaint had alleged adverse possession). Rather, the plaintiff alleged, and recovered on, a claim of trespass and counts seeking to quiet title and requesting injunctive relief.

The defendants argue further that it is not clear from the court's decision "what, if any, land [it] awarded to the plaintiff . . . ." We disagree. To the extent that the defendants again are arguing that the plaintiff, by virtue of the inaccurate reference in count one of its complaint, was required to prove that it owned the defendants' deeded property, we reject that argument in accordance with the preceding analysis. We further are not persuaded that the plaintiff failed to prove, or that the court failed to decide, the plaintiff's quiet title claim. The parties' deeds and a survey map were before the court. The defendants did not contest the accuracy of any of those documents, but rather, claimed a portion of the plaintiff's deeded property on the basis of a claim of adverse possession. Implicit in the court's rejection of that claim and its determination that "[t]he disputed [property] is not within the [defendants'] deed" is its conclusion that the plaintiff owns the property described in its deed, as alleged in its quiet title claim.

The plaintiff . . . owns the real estate at 82 South Washington Street, Plainville (Deed from Debbieann Durkin to [the plaintiff], EXHIBIT C).

"(2) [The plaintiff] obtained title to the aforesaid property (hereafter the 'Durkin property') by deed from Debbieann Durkin, dated July 8, 2003 and recorded in Plainville Land Records, Volume 415, Page 406 (EXHIBIT C) . . . ."

That conclusion also is apparent from the court's granting of the plaintiff's summary judgment motion, which encompassed that claim.

## II

The defendants claim next that the court improperly denied their motion for summary judgment as to their counterclaim. They argue that the undisputed facts demonstrated that they had acquired the area at issue by adverse possession. We are not convinced.

Summary judgment is warranted when the pleadings and evidence submitted demonstrate that there is no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law. *Barlow* v. *Palmer*, supra, 96 Conn. App. 90. Our review of this claim is plenary. Id., 91.

"[T]o establish title by adverse possession, the claimant must oust an owner of possession and keep such owner out without interruption for fifteen years by an open, visible and exclusive possession under a claim of right with the intent to use the property as his own and without the consent of the owner. . . . A finding of adverse possession is to be made out by clear and positive proof. . . . The burden of proof is on the party claiming adverse possession." (Internal quotation marks omitted.) *Alexson* v. *Foss*, 276 Conn. 599, 614 n.13, 887 A.2d 872 (2006).

There is no question that the defendants have owned their property, and the fence has been present on the disputed area, for only fourteen years. In order to establish adverse possession, therefore, they needed to show that their predecessors in title, the Michauds, adversely possessed the disputed area for at least the final year of their ownership. "It is sufficient if there is an adverse possession continued uninterruptedly for fifteen years whether by one or more persons." (Internal quotation

marks omitted.) *Matto* v. *Dan Beard, Inc.*, 15 Conn. App. 458, 479, 546 A.2d 854, cert. denied, 209 Conn. 812, 550 A.2d 1082 (1988). "[T]he possession [however] must be connected and continuous . . . ." (Internal quotation marks omitted.) Id., 479–80.

The court evaluated the undisputed facts and concluded that, as to the Michauds' use of the disputed area, all of the elements of adverse possession were lacking. We note that insofar as proof of all elements is necessary, a determination that the court's decision was proper as to any given element is fatal to the defendants' claim.

The defendants focus on the presence of the garden shed near one end of the disputed area. They allude to evidence that the Michauds mistakenly believed that the shed was on their property when they sold it to the defendants and argue that such a belief is sufficient to establish possession under a claim of right. According to the defendants, if the Michauds believed they owned the property under the shed, they necessarily believed that the land between the shed and their western boundary, i.e., the remainder of the disputed area, also was their property. The plaintiff argues in response that the court correctly concluded that the undisputed facts showed that the Michauds did not maintain the shed on the plaintiff's property under a claim of right and, as to the remainder of the disputed area, there simply was no evidence that the Michauds possessed it. We agree with the plaintiff.

In concluding that the Michauds did not use the plaintiff's property under a claim of right, the court referenced portions of the Michauds' affidavits. In the cited portions, the Michauds averred that they intended to transfer to the defendants only the land described in their deed; they never used the disputed area on a permanent basis; they never used the disputed area under

a claim of right; they never fenced in the disputed area; and when they purchased their property, they did not know how close to the boundary the shed was located, but did not intend to occupy beyond their border and would have moved the shed if asked "because it was small and could be moved easily."

The undisputed facts cited by the court support its conclusion that the Michauds did not maintain their shed under a claim of right. First, both Michauds attested that they did not intend to convey to the defendants anything beyond the property described in their deed.[7] In *Marquis* v. *Drost*, 155 Conn. 327, 332, 231 A.2d 527 (1967), our Supreme Court explained that the failure of a predecessor in title to convey the disputed area, either orally or by deed, destroys "the connection between successive adverse claimants which is necessary to the successful acquisition of title by tacking successive adverse possessions . . . ." See also 16 R. Powell, Real Property (2005) § 91.10 [2] (tacking not permitted when "it is shown that the claimant's predecessor in title did not intend to convey the disputed parcel").

Second, the Michauds in their affidavits clearly disavowed any intent to occupy the disputed area under a claim of right. In determining whether entrance on another's property amounts to an ouster, or rather, a mere trespass, "[t]he intention guides the entry, and fixes its character." (Internal quotation marks omitted.) *Boccanfuso* v. *Green*, 91 Conn. App. 296, 314, 880 A.2d 889 (2005); see also 16 R. Powell, supra, § 91.05 [5] [a] ("rule that disqualifies permissive use as adverse has importance not only when the true owner has affirmatively authorized the claimant's possession, *but also*

---

[7] Although the defendants argue that the Michauds "let [them] believe that the shed was on their property when the sale took place," there is no evidence that the Michauds made any express representations that the disputed area was within the property being conveyed.

*when the possessor disclaims an intent to violate the owner's rights"* [emphasis added]). In sum, the court correctly concluded that the undisputed facts demonstrated that the Michauds did not maintain the shed within the disputed area under a claim of right.

As to the defendants' claim that the Michauds mistakenly believed that the shed was on their property, the defendants are correct that a claimant's mistaken belief that he owned the property at issue is "immaterial in an action for title by adverse possession, as long as the other elements of adverse possession have been established." (Internal quotation marks omitted.) *Public Storage, Inc.* v. *Eliot Street Ltd. Partnership*, 20 Conn. App. 380, 384, 567 A.2d 389 (1989); see also 16 R. Powell, supra, § 91.05 [3] (majority rule is that mistaken belief as to boundary does not bar claim of right or negate essential element of hostility).

Nevertheless, the defendants' assertion that the Michauds believed the shed was on their property at the time they sold it to the defendants is contrary to the undisputed factual record. Specifically, although the Michauds indicated in their deposition testimony that they believed as much when they purchased the property in 1982, Raymond Michaud also stated that before selling the property to the defendants in 1989, he commissioned a survey that revealed that the shed was encroaching on the plaintiff's property. Raymond Michaud's knowledge of the encroachment, at the time he conveyed his property to the defendants, negates the notion of any continuity between the Michauds' possession under a claim of right on the basis of the mistaken belief and the subsequent possession of the defendants. See *Marquis* v. *Drost*, supra, 155 Conn. 331–32 (because adverse possession claimants could not tack immediate predecessor's nonadverse usage, they failed to establish fifteen years of continuous adverse use); 2 C.J.S. 511, Adverse Possession § 81

(2003) ("hostility must be continuous throughout the requisite period"). Accordingly, the defendants' argument as to mistaken belief is factually unpersuasive.

Because the defendants' claim that the Michauds adversely possessed the remaining portion of the disputed area is dependent on the success of their argument that the Michauds, at the time of the sale of their property to the defendants, adversely possessed the land beneath their shed, the claim necessarily fails. We note, however, that even if the defendants had established that the Michauds had adversely possessed the area beneath the shed, it would not automatically follow, as the defendants suggest, that they also adversely possessed the remaining area.[8] When not claimed under color of title, adverse possession "is limited to the area of land actually possessed." *Lisiewski* v. *Seidel*, 95 Conn. App. 696, 708, 899 A.2d 59 (2006). It can "only extend as far as [the] claimant has actually occupied and possessed the land in dispute"; (internal quotation marks omitted) id.; and the adverse possession of one area may not be inferred from that of a separate area absent independent proof of occupation. See id., 711–12; see also 2 C.J.S. 465, supra, § 39 ("[p]resumed, constructive, or fictitious occupation is insufficient"). In this regard, the plaintiff is correct that the undisputed factual record before the court lacked clear and convincing evidence that the Michauds had possessed the remaining portions of the disputed area. On the basis of the foregoing analysis, the defendants' second claim fails.

### III

The defendants claim next that the court abused its discretion in denying their motion to reargue the summary judgment motions. We do not agree.

---

[8] According to the defendants, if the Michauds believed they owned the land beneath the shed, they necessarily believed they owned the remainder of the disputed area and, further, "[i]f you believe the property is yours and treat it as yours, the other elements of adverse possession will fall into

Through their motions to reargue, the defendants sought to have the court reconsider its rulings on the motions for summary judgment. We review a trial court's decision on such matters for an abuse of discretion. See *Vogel* v. *Maimonides Academy of Western Connecticut, Inc.*, 58 Conn. App. 624, 631, 754 A.2d 824 (2000). "[A]s with any discretionary action of the trial court, appellate review requires every reasonable presumption in favor of the action, and the ultimate issue for us is whether the trial court could have reasonably concluded as it did. . . . In addition, where a motion is addressed to the discretion of the court, the burden of proving an abuse of that discretion rests with the appellant." (Citation omitted; internal quotation marks omitted.) *Baris* v. *Southbend, Inc.*, 68 Conn. App. 546, 555, 791 A.2d 713 (2002).

In conjunction with their motion to reargue, the defendants attempted to submit additional evidence that was not before the court when it decided the motions for summary judgment. Specifically, they presented a new affidavit from William Cunningham; an 1897 survey map they had located in town records that depicted an area in the vicinity of the parties' properties and which, they argued, called the accuracy of the plaintiff's survey into question; correspondence with a surveyor regarding the map; a photograph of the disputed property; and selected portions of the Michauds' depositions, some of which were not among the excerpts included with the summary judgment motions. In the motion itself, the defendants provided additional argument as to each of the elements of adverse possession, citing to the new evidence. They now argue that the court should have granted their motion to reargue and considered the new evidence. The defendants' argument is unavailing.

place." We reject this assertion as an oversimplification of the law governing adverse possession.

Newly discovered evidence may warrant reconsideration of a court's decision. However, "[f]or evidence to be newly discovered, it must be of such a nature that [it] could not have been earlier discovered by the exercise of due diligence." *Gabrielle* v. *Hospital of St. Raphael*, 33 Conn. App. 378, 387, 635 A.2d 1232, cert. denied, 228 Conn. 928, 640 A.2d 115 (1994). Clearly, the evidence that the defendants attempted to submit falls short of this standard. The 1897 map was available as a public record, and William Cunningham's affidavit indicates that it was referenced in his chain of title. As to the new selections from the Michauds' depositions, there is no question that they were not newly discovered. Furthermore, portions of William Cunningham's new affidavit did not pertain to the new evidence, but to the evidence already before the court in conjunction with the summary judgment motions. Our rules of practice require affidavits in support of or in opposition to summary judgment motions to be filed before the motion is to be heard; see Practice Book § 17-45; and "where an affidavit is not timely filed under the rules, the trial court does not abuse its discretion in refusing to consider it . . . ." 49 C.J.S 371–72, Judgments § 264 (1997).

A motion to reargue is not a device to obtain "a second bite of the apple or to present additional cases or briefs which could have been presented at the time of the original argument." (Internal quotation marks omitted.) *Opoku* v. *Grant*, 63 Conn. App. 686, 693, 778 A.2d 981 (2001). Rather, reargument is proper when intended "to demonstrate to the court that there is some . . . principle of law which would have a controlling effect, and which has been overlooked . . . ." (Internal quotation marks omitted.) Id., 692. Here, the defendants through their motion to reargue plainly were seeking the proverbial "second bite," and the court did not abuse its discretion in denying it.

## IV

The defendants' next claim is that the court improperly granted the plaintiff's motion for costs. We are not convinced.

The following additional procedural history is relevant. As previously mentioned, although their counterclaim alleged trespass on the part of the plaintiff, both defendants admitted during discovery that the plaintiff had not trespassed on their property. They subsequently withdrew their counterclaim, and the plaintiff filed a motion for costs, which the court granted at the December 20, 2004 hearing. During argument on the motion, the defendants' counsel explained that the purpose of the trespass claim essentially was preventive, i.e., to ensure that the plaintiff did not take action to destroy the defendants' fence. The court explained that this was not a proper basis for bringing a trespass claim. Although the defendants' counsel attempted to argue that the presence of surveyors on the defendants' property provided factual support for the trespass claim, counsel acknowledged, as Beverly Cunningham had at her deposition, that the defendants did not know who had employed the surveyors and merely assumed they were agents of the plaintiff.[9] The court found the trespass allegations to be untrue and that they were made without reasonable cause. Consequently, it awarded the plaintiff $500.

The court's award was made pursuant to Practice Book § 10-5. That provision authorizes "sanctions for filing substantive factual allegations or denials of substantive factual allegations without reasonable cause, when those allegations or denials are found to be

[9] The defendants' counsel also mentioned slight damage to the defendants' fence that resulted when the plaintiff was removing trees from its own property, which concededly was accidental. On appeal, they no longer claim that that occurrence was a viable basis for their trespass claim.

untrue." *Fattibene* v. *Kealey*, 18 Conn. App. 344, 357, 558 A.2d 677 (1989). "[T]he task of determining whether sanctions should be imposed is inherently fact bound, and requires carefully circumscribed discretion to be exercised by the trial court. . . . Good faith pleading must be judged in the light of all the circumstances existing at the time the pleading was filed." (Citations omitted; internal quotation marks omitted.) *Ossen* v. *Wanat*, 21 Conn. App. 40, 47, 571 A.2d 134 (1990), aff'd, 217 Conn. 313, 585 A.2d 685, cert. denied, 502 U.S. 816, 112 S. Ct. 69, 116 L. Ed. 2d 43 (1991). We review a trial court's award of costs under Practice Book § 10-5 for an abuse of discretion. See *Ossen* v. *Wanat*, supra, 48.

Given the admissions by the defendants and their counsel, we cannot say that it was an abuse of discretion for the court to award the plaintiff costs. Good faith has been defined variously as "[h]onesty of intention, and freedom from knowledge of circumstances which ought to put the holder upon inquiry"; (internal quotation marks omitted) *State* v. *Turner*, 267 Conn. 414, 449 n.3, 838 A.2d 947 (*Sullivan, C. J.*, dissenting), cert. denied, 543 U.S. 809, 125 S. Ct. 36, 160 L. Ed. 2d 12 (2004); or "being faithful to one's duty or obligation." (Internal quotation marks omitted.) *Kendzierski* v. *Goodson*, 21 Conn. App. 424, 429, 574 A.2d 249 (1990). Here, the defendants' awareness that they lacked personal knowledge as to the identity of the surveyors on their property obligated them to investigate further before charging the plaintiff with an intentional tort and causing it to incur expenses to defend against the same. Their failure to do so evidences a lack of good faith.

Moreover, even if the defendants had been correct in their assumption that the surveyors were agents of the plaintiff, surveyors are afforded statutory protection such that their presence on property typically does not

constitute a trespass. See General Statutes § 52-557o;[10] cf. *Zanoni* v. *Hudon*, 42 Conn. App. 70, 76, 678 A.2d 12 (1996) ("[i]f a person has a right to enter upon the property, there can be no trespass"). Accordingly, even if the defendants' trespass allegations could be said to have been made under a good faith factual belief, they still lacked reasonable cause. On the basis of the foregoing analysis, the defendants' fourth claim fails.

V

The defendants' final claim on appeal is that the court improperly disallowed certain testimony when hearing reargument on the plaintiff's motion for costs. This claim lacks merit.

The following additional procedural history is pertinent. During reargument on the plaintiff's motion for costs, the defendants' counsel attempted to offer the testimony of William Cunningham. According to counsel, Cunningham was to testify concerning his reasonable belief that the surveyors on his property were affiliated with the plaintiff. The court disallowed the testimony, given that Cunningham already had admitted at his deposition that no trespass had occurred. The court reasoned further that regardless of Cunningham's belief, it was not apparent that the presence of a surveyor constituted a trespass.

This claim concerns an evidentiary ruling of the court. "Generally, [t]rial courts have wide discretion with regard to evidentiary issues and their rulings will be reversed only if there has been an abuse of discretion or a manifest injustice appears to have occurred. . . . Every reasonable presumption will be made in favor of

---

[10] General Statutes § 52-557o provides in relevant part that "[n]o action for trespass shall lie against any surveyor . . . who enters upon land other than the land being surveyed without causing any damage to such other land in order to perform a survey . . . ."

upholding the trial court's ruling, and it will be overturned only for a manifest abuse of discretion." (Internal quotation marks omitted.) *State* v. *Gardner*, 96 Conn. App. 42, 52–53, 899 A.2d 655, cert. denied, 280 Conn. 906, 907 A.2d 92 (2006).

We conclude that the court's disallowance of the proffered testimony was not improper because the testimony was irrelevant. "Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue." (Internal quotation marks omitted.) Id., 53. As previously noted, insofar as § 52-557o precludes trespass actions against surveyors who merely enter upon land in the course of their duties; see footnote 10; William Cunningham's belief as to the identity of the surveyors on his property, even if reasonable, would not provide a good faith basis for the defendants' trespass counterclaim. The court did not abuse its discretion.

## VI

We turn now to the cross appeal. The plaintiff's sole claim is that the court improperly declined to hold a hearing in damages on its trespass claim. The defendants do not contest that a hearing was necessary. We agree with the parties.

The following additional procedural history is relevant. Shortly before issuing a memorandum of decision on the summary judgment motions, the court wrote to counsel,[11] indicating that it was inclined to rule against the plaintiff on its trespass claim[12] and questioning whether a hearing on that claim, as the plaintiff's counsel previously had requested, was necessary. The court gave the parties the opportunity to appear on March 21, 2005, if they disagreed. The parties appeared on that

---

[11] The court's letter is undated, but its content indicates that it was written in mid-March, 2005.

[12] The court, at the time it wrote counsel, considered the element of intent to be lacking.

date, and the plaintiff disputed the court's inclination regarding the trespass claim. In response to the court's query whether a further hearing was necessary, the plaintiff's counsel explained that he wanted the court to decide the liability aspect of the trespass claim as part of the plaintiff's summary judgment motion. He explained further, however, that were the plaintiff to prevail on that claim, he wanted an additional hearing as to damages.[13] See Practice Book § 17-50.

In its March 24, 2005 memorandum of decision, the court concluded that the defendants were liable for trespass because of the continued presence of their fence on the plaintiff's property subsequent to July, 2003, when the plaintiff had requested its removal. It reasoned that, at that juncture, the defendants could not have had an honest belief that the fence was on their own property. After noting that "[t]he parties declined an evidentiary hearing on the issue of damages and asked that the case be decided on the record," the court concluded that the plaintiff was entitled to only "minimal" damages of $250.[14] The court did not indicate how it arrived at that figure.

When a party prevails on a trespass claim, it is "entitled to damages based on the lost use value of the property [trespassed upon] and any harm caused by the trespass during the time of the defendants' occupation." *Robert* v. *Scarlata*, 96 Conn. App. 19, 24, 899 A.2d 666 (2006). The record clearly indicates that the plaintiff's counsel did not waive a hearing in damages on the trespass claim, but rather, explicitly requested such a

---

[13] The plaintiff's counsel stated: "I'm asking you to decide liability on the record, not damages on the record. We would want an opportunity after the liability has been decided to build a record for what the damages should be." The court replied, "All right. Okay."

[14] According to the court, it was not "the fence per se that prevented [the plaintiff's] full use of its property as it wished. The problem was the boundary dispute, not the existence of the fence."

hearing. His agreement that the claim be decided on the record pertained only to the question of liability. Accordingly, the court's award of damages, made without allowing the parties the opportunity to present relevant evidence as to the amount of those damages, was improper and requires a remand. See *Darling* v. *Waterford*, 7 Conn. App. 485, 488, 508 A.2d 839 (1986) (when court prevented plaintiffs from presenting evidence in support of trespass claim, "it is likely such error affected the final calculation of damages").

On the cross appeal, the judgment is reversed as to the award of damages and the case is remanded for a hearing in damages on the plaintiff's claim of trespass. On the appeal, the judgment is affirmed.

In this opinion the other judges concurred.